[PHILADELPHIA, FEBRUARY 15, 1833.]

## ⎰WINTERCAST and Others *against* SMITH.

### IN ERROR.

A legacy was left to a married woman, whose husband had deserted her, and from whom she was subsequently divorced from the bonds of matrimony. After the divorce she demanded payment of the legacy, which the executors refused, on the ground that the husband alone was entitled to it, although he had never claimed it, and it was uncertain whether he was dead or living.
*Held*, that the wife was entitled to recover.

ERROR to the District Court for the City and County of *Philadelphia*.

*Margaret Wintercast* the mother of *Elizabeth Smith*, the plaintiff below, and defendant in error, by her last will dated *May* 1st, 1827, authorised and empowered her executors to sell her real estate and divide the proceeds equally among her children. Her daughter, *Elizabeth*, the plaintiff below, was married in the year 1806 to *Henry Smith*, and had by him five children. In the year 1819, he deserted his wife and family and had not been heard of since. The testatrix died in the year 1828. The defendants below, who were her executors, settled their accounts in the Register's Office in *September* 1829, when it appeared that the balance in their hands for distribution amounted to seven hundred and eleven dollars and fifty-nine cents. In the year 1831, *Elizabeth Smith* petitioned the Court of Common Pleas of the county of *Philadelphia*, for a divorce from the bonds of matrimony, on the grounds of adultery and desertion by *Henry Smith*, and on the 22nd *October* 1831, the court decreed a divorce according to the prayer of the petition.

*Elizabeth Smith* claimed payment of the legacy in her own right, and on the refusal of the executors to pay it, the present suit was brought, which the defendants below resisted on the ground that the husband was solely entitled to the legacy.

The cause was tried on the 30th of *March*, 1832, when a verdict and judgment were given in favour of the plaintiff for the sum of one hundred and forty-two dollars and thirty two cents, being her share of the assets in the hands of the executors: on which a writ of error was taken out by the defendants below.

A bill of exceptions which was taken on the trial came up with the record, and in this court the following errors were specifically assigned:

1. That the court erred in charging the jury that the several matters and proofs given in evidence (set forth in the bill of exceptions) were insufficient to bar the plaintiff of her action, and acquit the defendant thereof.

2. That the court below erred in charging the jury that the plaintiff in consequence of the divorce obtained from her husband, *Henry Smith*, from the bonds of matrimony, on the grounds of adultery and desertion, at a session of the Court of Common Pleas for the city and county of *Philadelphia*, on the 22nd of *October* 1831, was entitled to recover in the said action, and to have a verdict in her favour for the sum of one hundred and forty-two dollars and thirty-two cents notwithstanding the sale of the real estate on the 25th of *June* 1829, in pursuance of the will of the testatrix, and that the said executors had received the money, the proceeds of the sale, before the plaintiff had obtained the said divorce, and had on the 12th of *September* 1829, settled their account of the administration of the said estate, in the Register's Office at *Philadelphia*.

After argument by *Keemle* for the plaintiffs in error, and *Armstrong* for the defendant in error, the opinion of the court was delivered by

KENNEDY, J.—This case has been brought up by a writ of error to the judges of the District Court of the city and county of *Philadelphia*. It is an action on the case commenced there by the defendant in error against the plaintiffs in error, to recover from them one fifth part of the moneys arising from a sale of the real estate, late of *Margaret Wintercast*, made by the plaintiffs in error as the executors of the last will of the said *Margaret*, which she thereby had directed to be sold, and the money arising therefrom to be divided equally among her five children, of whom the defendant in error is one. The plaintiffs in error sold the estate on the 25th day of *June* 1829, and on the 12th of *September* following settled their account in the register's office, exhibiting a balance, after deducting expenses, &c. of seven hundred and eleven dollars and fifty-nine cents remaining in their hands to be divided equally among the five legatees. The defendant in error was married in 1806 to *Henry Smith*, who lived with her untill 1819, when he left her, went off and has not been heard of since. On the 22nd of *October*, 1831, the Court of Common Pleas of the city and county of *Philadelphia*, passed a decree of divorce in her favour, freeing her from the bonds of matrimony, on the grounds of adultery and desertion by her husband.

The only question made on the trial of the cause below was, whether the plaintiff below, or he who had been her husband, was entitled to receive the money. The court decided this question in favour of the plaintiff below, and a verdict and judgment were accordingly given for her. The decision of the court below upon this question was excepted to by the plaintiffs in error and is the only thing that has been assigned for error here.

The counsel for the plaintiffs in error contended that the money arising from the sale of the real estate of the testatrix and given by her in her will to the defendant in error, as one of her children, vested *absolutely* in the husband before he was divorced from his wife; and that without his authority they would not be safe in paying the

(Wintercast and others *v.* Smith.)

money to her. The case of *Griswald* v. *Penniman*, 2 *Conn.* 564, has been cited, and principally relied on, as an authority deciding the question in favour of their position. The only difference between that case and the one under consideration is, that it was a distributive share of an intestate's estate that was claimed there, and here it is a share of a testator's estate given by her will, that is claimed. I am not satisfied that any distinction ought to be made between the two cases on this ground. In *Griswald* v. *Penniman*, the court decided that the administrators of a husband who died in the lifetime of his wife were entitled to the wife's distributive share of her father's personal estate who died in the lifetime of the husband. They say, that such distributive share vested *absolutely* in the husband immediately upon the death of his wife's father : That he might have maintained a suit for it in his own name alone, had he lived, and that that being the case it must therefore be considered as having vested in him *absolutely*, and upon his death as passing to his personal representatives. Now I conceive that it does not at all follow, that because a husband may maintain an action exclusively in his own name for a *chose in action*, that he must necessarily be vested with an *absolute* and *unconditional* right to it. For there are many cases in which he may maintain an action without joining his wife, for a cause with which he is invested in right of his wife, and where it has accrued through and by means of her during the coverture, in which the right will most undoubtedly survive to her upon his dying without having brought a suit, or having extinguished the right in any way. In the case of a trespass committed during the coverture upon a freehold real estate, or estate of inheritance, which he holds in right of his wife, he may support an action for it in his own name alone. 1 *Rolle Abr.* 347, l. 40, or in the name of himself and wife jointly. *Ibid.* 348, l. 18. And in case of his death without having prosecuted such a suit to judgment, the cause of action survives to his wife and she may maintain it. *Ibid.* 349, l. 29, so in the case of *Howell* v. *Maine*, 3 *Lev.* 403, it was held that the husband might support an action in his own name alone, upon an obligation which had been given to his wife *dum sola*. Yet all the authorities concur in saying that they may join in bringing such an action. Indeed, in *Fenner* v. *Plasket*, *Moore*, 422, it is said that they must join ; which is repeated in 2 *Wils.* 423. And if the husband should die without having recovered or received the amount of such obligation, the right to sue on it, it is admitted in all the cases on this subject, would survive to the wife if she be living at the time of his death.

If a bond be made to husband and wife jointly, during the coverture, the husband may sustain a suit upon it in his own name alone, or join his wife with him at his pleasure. *Hilliard and wife* v. *Humbridge*, *Alleyn*, 36. S. C. *Styles* 9. *Litt. Rep.* 13. See also *Aleberry* v. *Walby*, 1 *Stra.* 229. But if the husband die without bringing a suit, the wife surviving, she will succeed to the right of

action upon the bond by survivorship. Nothing but some positive act upon the part of the husband in his lifetime, showing his disagreement to her right in the bond, will exclude the wife after his death; such, for instance, as bringing a suit on it in his own name alone; for if he join her name, and die pending the suit, it will survive to her. *Coppen* v. ———, 2 *P. Wms.* 497. The propriety of the husband and wife's joining as plaintiffs in an action, *does not*, as I apprehend, depend solely upon the contract, out of which the cause of action arises, having been made before or after the marriage. For though they may perhaps join in all cases where the contract was entered into with the wife *dum sola*, yet in cases of contract after the marriage, wherever she is the meritorious cause and moving consideration of it, they may also join: and the cause of action will survive to the wife upon his dying in her lifetime without having done any act to exclude her. As in the case of a promise made to the wife for the cure of a wound or disease performed by her by the exercise of her skill during the coverture. *Shipston* v. *Booler*, 1 *Sid.* 25. *Fountain* v. *Smith*, 2 *Sid.* 128. *Brashford* v. *Buckingham et ux. Cro. Jac.* 77. *S. C. ib.* 205, and in this last case it is said expressly, that such cause of action would survive to the wife. *Rose and wife* v. *Bowler,* 1 *Hen. Bl. Rep.* 114. *Weller et al* v. *Baker*, 2 *Wils.* 414. And in *Lodge* v. *Hamilton*, 2 *Serg. & Rawle*, 493, it was ruled by this court, that a recognizance taken in the Orphans' Court to the husband and wife to secure the payment of the wife's share of the valuation money of a tract of land, of which her father died siezed in fee, survived to her upon the death of her husband; and that the money did not belong to his administrators. And the late Chief Justice TILGHMAN, who delivered the opinion of the court, says, " The general rule is, that the *choses in action* of the wife survive to her, unless the husband had reduced them into possession or assigned or released them *during the coverture.* And the same rule prevails where the husband and wife jointly become entitled *to a chose in action during the coverture.*"

The counsel in the case of *Griswald* v. *Penniman*, seems to have considered the case of *Carey* v. *Taylor*, 2 *Vern.* 302, as directly in point. In this, however, I think there was a misapprehension of that case; for the husband there survived the wife and would have been entitled to all the wife's personal estate, including her *choses in action*, as next of kin, under the statute of distributions, if upon no other ground. See *Squib* v. *Wyn*, 1 *P. Wms.* 380. *Cart* v. *Rees*, Ibid. 381, 382. *Humphreys* v. *Bullen*, 1 *Atk.* 458. *Elliot* v. *Collier et ux.* 1 *Wils.* 168. *S. C.* 3 *Atk.* 526, and Mr. *Butler's note* (1) to *Co. Lit.* 351. *a.* The question of survivorship could not have arisen. But the case appears from Mr. *Raithby's* note to it, in which he has given an extract from the decree itself, to have been decided in favour of the husband's personal representatives exclusively on the ground of his title to it growing out of the terms of a marriage settlement which had been made.

The case of *Shuttlesworth* v. *Noy*, 8 *Mass.* 229, was also relied on

(Wintercast and others *v.* Smith.)

there, and has been cited here, but the question did not arise in that case and was not decided by the court. The husband and wife were then still both living ; and the court only decided that the money due upon a note given payable to the wife during the coverture might be attached by the creditors of the husband; because, as they say, " a note made payable to a *feme covert* is legally payable to the husband," to which 'is superadded, what was certainly not necessary to or connected with the decision of the case, that " after the husband's death, it would go to his executor or administrator and not to the wife." This point not arising in the cause, could not have been argued, and must be regarded as an *obiter dictum* thrown out without due deliberation ; which is repudiated by the decision of that same court and the doctrine and principles laid down by it in *Draper* v. *Jackson and wife,* in 16 *Mass.* 480. In this case it was held, that a note and mortgage made to husband and wife, to secure the payment of the price of a tract of land belonging to the wife, which they had sold and conveyed to the drawer of the note, survived to the wife upon the husband's dying without having done anything with either ; and that the money did not belong to his administrator. The subject appears to have received a very full consideration ; and a very elaborate opinion was delivered by Mr. Justice JACKSON, in which he has referred to and reviewed many of the ancient authorities relating to it.

To the authorities already referred to, which shew that where the wife is the meritorious or moving cause and consideration for a promise, note, bond or recognizance made to her during the coverture, or to her and the husband jointly, that it will survive to the wife unless the husband in his lifetime has done some act to exclude her, may be added, *Nash* v. *Nash,* 2 *Madd.* 133 (*Eng. Ed.*) but 411 (*Amer. Ed.*) where a father after the marriage of his daughter drew a cheque in her favour upon his bankers for ten thousand pounds; the bankers gave her a promissory note for the ten thousand pounds. Afterwards one thousand pounds, part of the principal of the note was paid to the husband, who also received the interest as it became due upon the note up to the time of his death. It was held upon his death that his wife who survived him was entitled to the note as a *chose in action* which had survived to her. In *Day* v. *Pasgrave,* 2 *Maule & Selw.* 396, note 6, where the plaintiff as administrator of his wife, brought debt on a bond given to her during the coverture ; and on demurrer to the declaration, it was objected, the action should have been brought by the husband in his own right and not as administrator, because the wife never had any sole right of action in her. But the plaintiff had judgment on the ground, that the right to the bond would have *survived to the wife* if she had outlived her husband. And in *Philliskirk* v. *Pluckwell,* 3 *Maule & Selw.* 396, the question was made, whether husband and wife may sustain a suit upon a promissory note made to the wife during the coverture ? Ld. ELLENBOROUGH was of opinion that they might, and says that " In *Co. Lit.* 120, *a.* 1 *Roll.*

(Wintercast and others *v.* Smith.)

*Abr. Baron &. Femme, H. Pl.* 6 and 7, a difference is taken between a thing that is not merely a *chose in action* and one that is; and therefore in the case of a bond made to the wife, if the wife dieth the husband shall not have it without taking administration, because that is merely a *chose in action;* so here the note is made to the wife; and it imports a consideration unless the contrary be shewn." Mr. Justice DAMPIER concurred in this opinion.

The cases of *Lightbourn* v. *Holiday,* 2 *Eq. Abr.* 1 *pl.* 5, and *Hodges* v. *Beverly, Bunb.* 188, may now be considered as entirely overruled; where in the first, a promissory note given to the wife during marriage for the payment of money, and in the latter case, an accountable receipt given for money to her also during the marriage, were held not to survive to the wives upon the deaths of their respective husbands.

These late cases are also in accordance with what is said to be the law in our most ancient books of authority. See *Fitz. Abr.* tit. *Brief,* 19, where in an action of debt on a bond made to the husband and wife, in which both had joined, it was objected, that the action should have been brought by the husband alone; but BABBINGTON, Chief Justice, said it might be brought in either way. This proposition is laid down again and repeated in *Bro. Abr.* tit. *Baron and Feme,* pl. 50 and 60. And in 1 *Danv. Abr.* 715, this proposition is stated, that if an obligation is made to husband and wife, the wife shall have it by survivorship; for which is cited 43 *Ed.* 3, 10, and 4 *Hen.* 6, 6. and adds, "*M.* 6 *Jac. B. C.* adjudged upon demurrer. *Tr.* 10 *Car. in Canc. Scaccarii,* between *Spark & Fairemanner,* adjudged in a writ of error." See same in *Vin. Abr.* tit. *Baron & Femme* (*B. a. pl.* 1.).

In *Christ's Hospital* v. *Budgin & ux.* when the husband had lent out money in the names of himself and his wife upon mortgages and bonds, and died, leaving his wife surviving, it was decreed that she was entitled to the money by survivorship, unless so far as it might be wanted to pay the debts of the husband. 2 *Vern.* 683.

I am also inclined to believe that the distributive portions or shares of the personal estates of intestates ever have and must still be looked upon as *choses in action,* until recovered, or reduced to actual possession by those entitled to receive them.

A portion due to an orphan in the hands of the chamberlain of *London,* was decided to belong to the orphan who survived her husband. *Pheasant* v. *Pheasant,* 1 *Chan. Ca.* 181. *S. C.* 2 *Ventr.* 341. But if the husband survive the wife he will be entitled to it. *Fouke* v. *Lewen,* 1 *Vern.* 88. The statute of distributions has been likened to a will in its effect, and the portions arising under it to legacies. In *Brown* v. *Shore,* 1 *Show.* 26, Lord HOLT, C. J. in speaking of this act says, it " is the same as if the party had made his will to this effect; the common case of a residuary legatee, who dies before probate, his executor shall have administration, and not the next of kin to the testator; that proves this case. A right of action or *chose in action* will go to executors." The question in the case was whether the

(Wintercast and others *v.* Smith)

act of distribution vested an interest immediately in the distributees upon the death of the intestate, so that if they or any of them died before the distribution made, the portions or shares of such dying should go to his or their respective executors, or to the next of kin to the intestate in being at the time of distribution made. It was ruled that the personal estate of the intestate vested in his next of kin *eo instanti* that he died. Considering the portions of the intestate's estate given by the statute as vested legacies and *choses in action* that would pass to the executors or administrators of such distributees as might happen to die before they had received their repective shares. EYRES, Justice, in the same case says, "the design of the statute was to make a will for the intestate."

With respect to legacies, I think they have been almost uniformly regarded as *choses in action;* and when given to a married woman, will, unless received, released or perhaps assigned for a valuable consideration by the husband, survive to her upon his dying before her. I am not aware of any case which contradicts this, except an anonymous one in 2 *Rolle's Rep.* 124, where it is stated, that a legacy of ten pounds was bequeathed to a *feme covert,* to be paid eighteen months after the death of the devisor; during the eighteen months the wife died, and administration was granted to her daughter. MONTAGUE, Justice, said, the ten pounds did not belong to the daughter; that the husband had an interest in it before the time of payment accrued, and could have released it before it became payable. No authority is cited for this dictum or decision if it may be so called; and the reason assigned for it, that the husband could have released it in the lifetime of his wife before it became payable, is certainly very inconclusive; because in all the cases already referred to, where it has been held that the right and the cause of action survived to the wife, the husband could have released and extinguished the right.

In *Nanney* v. *Martin*, where a legacy of three hundred pounds and other moneys were given by the will to the wife before marriage, and upon a bill filed by the husband and wife a decree was made in their favour for the payment thereof when the husband died; it was held that the wife was entitled to the amount of the decree by survivorship. 1 *Chan. Rep.* 124. *S. C.* 1 *Chan. Ca.* 27. In *Garforth* v. *Bradley,* 2 *Ves.* 676-7. The wife during coverture by the will of her mother became entitled to a legacy, and also to a part of the residue of the testatrix's estate which had been bequeathed to another legatee who died in the lifetime of the testatrix. The wife survived her husband and died: And the question was, whether these bequests belonged to the representatives of the husband or of the wife. There had also been a marriage settlement. Lord HARDWICKE said, " the question would depend entirely on the construction of it, and the covenants contained therein, for as to the *general question it would certainly survive to the wife,* if nothing by way of contract attended

the case; for wherever a *chose in action* comes to the wife, whether vesting *before* or *after* the marriage, *it will survive to the wife;* with this distinction, that as to those which come during the coverture, the husband may for them bring the action in his own name, may disagree to the interest of the wife; and that recovering in his own name is equal to reducing into possession." In the case of *Blount* v. *Bestland,* 5 *Ves.* 515, a legacy of six hundred pounds was bequeathed to the wife during marriage, and after it became payable the husband agreed with the executrix that she need not call in certain moneys due upon a mortgage with which the executrix said she intended to pay the legacy, but that it might remain, upon the interest being paid to him, until he should want the principal, and he accordingly received upon it afterwards two half years interest, disposed of the principal by his will and then died. The Lord Chancellor declared the legacy to be in effect a *chose in action* which could only have been obtained by suit, to which the wife must have been made a party and that it survived to her.

In *Brotherow* v. *Hood, Comyn's Rep.* 725, a legacy of sixty pounds bequeathed to the wife, who married, and the husband dying before it became payable, was held to be a *chose in action,* which survived to the wife.

In *Wildman* v. *Wildman,* where a married woman became entitled as next of kin of an intestate to the sum of thirteen thousand three hundred and thirty-three pounds six shillings and eight pence, three per cent consolidated annuities, which was transferred by the administrator into her name to her sole and separate use; and the husband dying without having exercised any act of control or ownership over it, it was adjudged that it survived to the wife. 9 *Ves.* 174.

The right of the wife to receive legacies by survivorship, where they have been given to her during marriage, has been held not to be affected or barred by the husband's becoming bankrupt or insolvent, and the consequent assignment of all his property for the benefit of his creditors, where he dies leaving his wife surviving, before the assignees shall have received payment, although they may exhibit a bill to compel it. See *Pierce* v. *Thornley,* 2 *Sim.* 167, and *Gayner* v. *Wilkinson, Dick.* 491.

That the legacy in question is a *chose in action,* has in effect been decided, as I conceive, by this court, in the case of *Morrow* v. *Brenizer,* 2 *Rawle,* 185, where the testator had directed his real estate, as in this case, to be sold by his executors, and the moneys arising therefrom to be equally divided among his children, but before a sale was effected by the executors, a judicial sale of all the right and interest of one of the children in the estate was made by the sheriff under a judgment against him; and held that nothing passed by it to the purchaser. This goes to shew that the legatee against whom the judgment and execution were had and issued, had no right of property in the land sold thereon, and which was directed by the will to be sold by the executors for his benefit and that of others. That his claim

(Wintercast and others *v*. Smith.)

under the will was to money which was to be raised out of the land by a sale of it : that it was in the nature of a *chose in action* and therefore not the subject of an execution.   Neither could his proportion of the money produced from a sale of the land afterwards made by the executors under the will have been levied on as his property before it was paid over to him, because admitting that money may be taken in execution, (see the *King* v. *Webb,* 2 *Show,* 166, and *Francis* v. *Nash, Ca. Temp. Hardw.* 53,) still it could not be considered his property for that purpose until received. Upon this principle, it has, as I take it, ever been held, that a sheriff who has in his hands two writs of *fieri facias,* one against and the other in favour of the same person, and collects the money upon the *fi. fa.* in his favour, but can find nothing upon which to levy the amount of the other against him, cannot levy it out of the money which he has collected, because it is not considered the specific property of the party plaintiff in the execution upon which it was made, until it is paid over to him by the sheriff. *Armistead* v. *Philpot, Doug.* 231.   *Turner* v. *Fendall,* 1 *Cranch,* 117.

In every view which can be taken of the legacy in question, it appears to me that it must be considered as a mere *chose in action,* and as the husband has never made any claim to it, and is now debarred from doing so by the divorce, which has dissolved the ties of matrimony between the defendant in error and him, the judgment of the court below was right and is therefore affirmed.

Judgment affirmed.