**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 9 2001**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

No. 00-3066

DAVID ESPINOZA,

      Defendant - Appellant.

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**
**(D.C. No. CR-99-20031-01-KHV)**

---

Charles E. Ambrose, Jr., Special Assistant United States Attorney, Kansas City, Missouri (Jackie N. Williams, United States Attorney, with him on the brief) for Appellee.

Michael Lewis Harris, Assistant Federal Public Defender, Kansas City, Kansas (Charles D. Dedmon, First Assistant Federal Public Defender, on the brief) for Appellant.

---

Before **KELLY**, **HOLLOWAY** and **HENRY**, Circuit Judges.

---

**HOLLOWAY**, Circuit Judge.

---

      Defendant/Appellant David Espinoza was convicted of possessing with intent to distribute more than one hundred kilograms of marijuana in violation of 21 U.S.C. § 841(a) and was sentenced to a term of 60 months' imprisonment to be followed by five

years' supervised release. He now appeals his conviction on the ground that his right to a fair trial was violated. Specifically, Mr. Espinoza argues that the trial judge erred by: (1) improperly giving the jury a "deliberate ignorance" instruction though there was no evidence that he had engaged in deliberate acts to avoid gaining actual knowledge of the marijuana, as is required for such an instruction; and (2) admitting in evidence, contrary to Federal Rule of Evidence 403, testimony that members of his family had been involved in the drug trade, though the probative value of that evidence was substantially outweighed by its prejudicial effect. We have jurisdiction pursuant to 18 U.S.C. § 1291.

# I

## FACTUAL AND PROCEDURAL BACKGROUND

### A

In March 1999, federal agents assigned to the Organized Crime Drug Enforcement Task Force in southern Texas received information from informants that rental trucks were being used to smuggle drugs from Mexico through Odessa, Texas. 2 R. at 20. Conducting surveillance of an address in Odessa, the police noticed a Ryder rental truck leave at 5:00 a.m. on March 30, 1999. Id. at 20-21. The truck was occupied by Defendant Espinoza and his wife, Patricia, who lived in the border town of Presidio, Texas, about three or four hours south of Odessa. The agents observed the truck proceed north and photographed the Espinozas at service stations en route to Kansas City, Kansas.

-2-

The truck stopped at a convenience store as it approached Kansas City, and the agents witnessed Patricia use a pay telephone while Defendant remained in the truck. Id. at 30. After over an hour at the convenience store, the truck proceeded to the Gables Motel in Kansas City, where the truck was parked. The Espinozas then entered a motel room. The agents observed Defendant leave his motel room, open the rear of the truck, and retrieve small pieces of luggage. He then returned to the room. Id. at 31-32. Shortly before midnight, the surveillance team noticed that a small Mazda pickup truck had arrived at the Gables Motel. The driver of the Mazda entered the motel room occupied by the Espinozas. He then exited the room followed by Defendant who, in the Ryder truck, followed the Mazda pickup to a residence at 299 South Valley, Kansas City, Kansas. Id. at 46.

When Officer Santiago Vasquez (who speaks Spanish fluently) approached the open front door of the residence at 299 South Valley, he heard female voices say in Spanish "the police is here, the police is here." Id. at 58. Officer Vasquez and Special Agent Tim McClue of the DEA then ran to the rear of the house where they saw silhouettes of what appeared to be the drivers of the pickup and rental trucks. They were jumping over a fence. Id. at 47-48. Agents found Defendant Espinoza on the ground in a wooded area near the fence. However, they did not find the driver of the pickup truck.

The officers took Espinoza to the front of the residence where he was advised of his Miranda rights in Spanish. He then executed a written waiver on a Spanish-language

form.  Id. at 72.  Defendant Espinoza told the officers that he had arrived in Kansas City the previous Saturday or Sunday, i.e. March 27 or 28, and that he was vacationing and staying with his brother-in-law at the American Inn.  Id. at 74.  This story conflicted with the surveillance team's observation that he had arrived that day (March 30) and was staying at the Gables Motel.  Defendant Espinoza also told the officers that he had been approached by a Mexican male who identified himself only as "Pepe," and that Pepe had asked him to follow him first to another motel and then to drive the Ryder truck to an unknown location.  Id.

Defendant executed a written, Spanish-language consent to search form granting the officers permission to search the Ryder truck.  Id. at 76.  A drug detection dog was brought to the truck and alerted on the "headliner" located above the passenger side of the truck cab.  Peeling back the liner, the officers discovered a concealed compartment containing 131 bundles of marijuana weighing approximately 268 pounds.  4 R. at 121, 133.  Inspection of the cargo area of the truck revealed broken, wet, stained, and foul-smelling furniture and appliances.  Id. at 121-22.  The officers believed this to be a "cover load" designed to convey the false impression that the truck was engaged in a household move.  Id. at 125.  The officers noted that the cargo did not contain clothes, personal papers, dishes, or other items normally associated with a household move.  Subsequent investigation revealed that the truck had been rented in Odessa by one Geraldo Mendoza for a one-way trip to Kansas City and that the Gables Motel room had been registered to

Patricia Espinoza.  Id. at 130.

On April 2, 1999, while being transported from the Wyandotte County jail to a court hearing, Defendant Espinoza told Deputy Victor Chavez in Spanish: "Look, you know . . . I want to come out with the truth.  I lied during my initial interview, and my wife is the one that set up the whole deal and I was just a passenger."  2 R. at 77.

At trial, Defendant testified on his own behalf with the assistance of an interpreter. He admitted being in the Ryder truck on March 30, 1999, but said that he and his wife were bringing a load of furniture to Kansas City.  4 R. at 164.  He stated that he only once opened the back of the truck but did not see very much because it was "very dark."  Id. He stated that his wife had done all of the driving because he suffered from epilepsy. Defendant Espinoza also claimed to have a bad heart, a bad back, and diabetes.  Id. at 164-65.  Defendant Espinoza testified that he went to a motel but left when a young man his wife had telephoned upon their arrival appeared and asked about the truck.  Defendant claimed that he wanted to give him the key to the truck, but the young man asked him if he could help since he did not have anyone else to help him.  Id. at 167.  Defendant at first told the young man that he could not help because his back was hurting too much, but then agreed because his wife was taking a shower at the time.  Id.

Defendant testified that he parked the truck in front of the house at 299 South Valley Road and was invited inside by the young man.  He gave him the keys and then went into the back yard with him.  Defendant Espinoza testified that he had gone around

the house to urinate when the young man began running, jumped over a fence, and called to him. Defendant Espinoza followed but when he tried to jump over the fence, he fell into a hole and was arrested as he tried to climb out. Id. at 167-68. He denied having made any post-arrest statement to Deputy Chavez, denied knowing there was marijuana in the truck, and stated that his wife had made all the arrangements for the trip.

**B**

Before trial, the prosecution filed a trial memorandum and a notice seeking permission to admit uncharged, similar crimes evidence, as is required by Federal Rule of Evidence 404(b).[1] Specifically, the government gave notice that it might introduce at trial evidence of, inter alia, a prior trip Defendant Espinoza and his wife had allegedly made to the Kansas City area to deliver drugs and evidence that Defendant's son had delivered drugs from the same co-conspirators who hired him and his wife. 1 R. at Doc. 62. In response, Defendant Espinoza filed a brief contesting the admission of the proffered

---

[1]Federal Rule of Evidence 404(b) states:
> **Other crimes, wrongs, or acts**. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

evidence under Rule 404(b) and denying the relevance of this evidence, arguing that its probative force, if any, was "grossly overbalanced by the prejudice of the familial assumptions which would underlie the probative significance of the son's prior drug dealings." 1 R. at Doc. 69, p. 4.

At a bench conference held out of the presence of the jury prior to the government's cross-examination of Defendant, the prosecution stated that because Defendant had, in its opinion, raised the issue of knowledge by denying that he knew there was marijuana in the truck, it proposed to cross-examine him regarding prior trips that he had allegedly made with his wife to deliver drugs to the Kansas City area. Defendant Espinoza objected, emphasizing the evidence's prejudicial impact. He also objected to admission of evidence concerning his children's involvement with drugs. The prosecution responded by stating that it had learned from Defendant's wife that she and her sons were supplied by the same marijuana supplier in Mexico; consequently, since Defendant Espinoza knew his two sons were in jail for drug activities and that his wife had been indicted in Texas for possession of cocaine, he would be more likely to have known of the illegal nature of the trip. Defendant Espinoza clarified that his objection was made under Rule 403.

The trial judge overruled his objection and permitted the prosecution to cross-examine Defendant Espinoza on the matter. The testimony appears in the margin.[2]

---

[2]

PROSECUTION:    Had you not made other trips to the Kansas City area and elsewhere with

-7-

|  |  |
|---|---|
| | your wife carrying drugs on occasions before this? |
| ESPINOZA: | No, sir. |
| PROSECUTION: | Who is Arturo Rodriguez? |
| ESPINOZA: | I don't know. |
| PROSECUTION: | Isn't it a fact that Mr. Rodriguez lives in Ojinaja, Mexico, very near Presidio, and that he is the supplier of marijuana to your wife and to two of your sons? |
| ESPINOZA: | I don't know that gentleman, and I have never seen him. I told you I don't have friends. |
| PROSECUTION: | Who is Hector Solis, S-o-l-i-s? |
| ESPINOZA: | I don't know. |
| PROSECUTION: | Have you ever accompanied your wife to Topeka, Kansas? |
| ESPINOZA: | No, sir. |
| PROSECUTION: | Do you have an explanation then for why she was carrying a Topeka, Kansas, motel card in her belongings when you were arrested in Kansas City? |
| ESPINOZA: | I don't know. |
| PROSECUTION: | Isn't it a fact that you actually made a trip with her to Topeka and Mr. Solis paid your wife and you $8,000 for that trip? |
| ESPINOZA: | That doesn't mean that I was with her. |
| PROSECUTION: | Did you know she had done it? |
| ESPINOZA: | No, sir. |
| PROSECUTION: | You never saw any of the $8,000 when you got back home? |
| ESPINOZA: | No, sir. |

4 R. at 178-79.

The prosecution then returned to the subject of Defendant's sons:

|  |  |
|---|---|
| PROSECUTION: | Do you have a son named David? |
| ESPINOZA: | Yes, sir. |
| PROSECUTION: | Where is he now? |
| ESPINOZA: | In Mexico. |
| PROSECUTION: | Why is he in Mexico? |
| ESPINOZA: | I don't know. |
| PROSECUTION: | Isn't it a fact he's in Mexico because he fled from a halfway house after a drug conviction dealing with the same Arturo Rodriguez I mentioned earlier? |
| ESPINOZA: | He's an older boy. I don't get involved with him. Whatever they do, that's their account. I can't get involved with them. |
| PROSECUTION: | How about your next son, Johnny, where is he now? |
| ESPINOZA: | He's here in the U.S., but I don't know exactly where. |

On November 10, 1999, Defendant moved for a new trial pursuant to Fed. R. Crim. P. 33, predicated in part on the prosecutor's questions concerning Defendant's family, on the ground that under Rule 403 the probative value of the evidence was greatly outweighed by its severe prejudicial impact. The trial judge issued a Memorandum and Order overruling the motion on the grounds that evidence concerning Defendant's wife and her involvement with cocaine "were relevant to defendant's awareness of a high

---

PROSECUTION: He's in a halfway house, too, isn't he, following a drug conviction?
ESPINOZA: No. He's out of there now.
PROSECUTION: But he was in a halfway house for drug conviction, wasn't he, sir?
ESPINOZA: Yes, I heard that he was.
PROSECUTION: And who did you hear that from?
ESPINOZA: My wife told me that.Id. at 181-82.

Finally, the prosecution elicited testimony from Defendant that his wife was facing drug charges for being caught with cocaine on a bridge in Presidio, Texas.

PROSECUTION: And your wife is facing additional drug charges in Texas , isn't she, sir?
ESPINOZA: Yes, sir. They caught her one time at the bridge.
PROSECUTION: What bridge is that? Is that the check point in Martha, Texas?
ESPINOZA: No, sir, in Presidio.
PROSECUTION: And what was she doing when they caught her?
ESPINOZA: She was coming over here. It's a personal thing that she used to use all the time.
PROSECUTION: Cocaine?
ESPINOZA: Yes, sir.
PROSECUTION: Despite your sons' problems and your wife's problems with drugs, when she arranged with a girl friend or this Pepe that you didn't know to take this 20-hour drive to Kansas City without a way home, you didn't suspect a thing?
ESPINOZA: No, sir.

Id. at 182-83.

probability that the rental truck contained drugs" and that the "drug charges against Defendant's two sons were relevant because the government had information that the individual who supplied drugs to the sons was also involved in this case, and that Defendant was aware of this supplier."[3]  I R. at Doc. 95, p. 8 (Memorandum and Order)

## II

## RULE 403

## A

Defendant Espinoza bases his "guilt by association" challenge to the admission of evidence concerning the wrongdoing of his wife and sons on Rule 403, which provides that although relevant, "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading to the jury."[4]  He contends that the ruling below "failed to take into account the special taint of consanguinity" and argues that since he is the head of the household, the admission of evidence that the other members of his family were involved with drugs "almost

---

[3]The trial judge noted that since Defendant had "denied knowledge of the individual who had supplied drugs to the sons," the prosecution "could not use this particular line of questioning for its purported purpose, i.e. to show that Defendant knew that the individual who had supplied the rental truck was a drug dealer."  I R. at Doc. 95, p. 8 n.2.

[4]We note that when presented with analogous circumstances, other courts have analyzed this question under Rule 401, which defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  See United States v. Polasek, 162 F.3d 878, 884 n.2 (5th Cir. 1998) ("We have not yet explicitly determined what statute or rule of evidence guilt by association evidence violates.  Many of our sister circuits, however, have concluded that such evidence is irrelevant under Federal Rules of Evidence 401 and 402 or unduly prejudicial under Rule 403.").

compelled" the conclusion that he was guilty as well. Appellant's Brief at 19. In response, the government argues that it sought to admit the evidence regarding Defendant's family only to establish that he had a compelling reason to ask his wife why they were traveling from Texas to Kansas on behalf of a stranger. Moreover, the government's evidence was not offered in its case-in-chief, but only on cross-examination after Defendant Espinoza testified that his wife Patricia had never done anything wrong before and thus that he had had no reason to inquire why they were traveling to Kansas.

We review for abuse of discretion a trial court's rulings under Rule 403. Stump v. Gates, 211 F.3d 527, 534 (10th Cir. 2000); Deters v. Equifax Credit Info. Servs., Inc., 202 F.3d 1262, 1274 (10th Cir. 2000).

**B**

Defendant challenges the admission of three categories of such evidence: (1) evidence that his wife has a pending drug charge; (2) evidence that he and his wife made previous trips from Texas to Kansas to transport drugs; and (3) evidence that his sons had been involved in the drug trade.

Concerning the first two categories - his wife's pending drug charge and Defendant's alleged previous trips with his wife to Kansas transporting drugs - we conclude that their admission was not in error. The admitted evidence was of substantial relevance because it addressed the issue of whether Defendant had knowledge that the

rental truck contained drugs. Evidence that Defendant Espinoza was aware that his wife had smuggled drugs into the United States from Mexico before and that he had accompanied his wife on earlier drug runs to Kansas makes it more likely that Defendant was aware of the presence of drugs on the truck during this particular trip. Since his knowledge was a focal point of the trial, we are not persuaded by his argument that the prejudicial impact of this evidence substantially outweighed its probative value. Consequently, we cannot conclude that the trial judge abused her discretion. See Securities and Exchange Comm'n v. Peters, 978 F.2d 1162, 1171 (10th Cir. 1992) ("The exclusion of relevant evidence under Rule 403 is 'an extraordinary remedy to be used sparingly.'") (quoting K-B Trucking Co. v. Riss Int'l Corp., 763 F.2d 1148, 1155 (10th Cir. 1985)).

The admission of evidence concerning Defendant's sons, however, is a different matter. Evidence establishing that his son David was in Mexico, having escaped a halfway house after a drug conviction, and that his other son Johnny had also been in a halfway house because of a drug conviction is of substantially less relevance to the disputed issue. See Stahl v. Sun Microsystems, Inc., 19 F.3d 533, 539 (10th Cir. 1994) (upholding exclusion of evidence where "its probative value was slight, while the potential for unfair prejudice is obvious"). Unlike the evidence concerning Mrs. Espinoza, it was never suggested at trial that the sons were involved in the instant trip from Texas to Kansas City. Thus, contrary to the government's assertions, the fact that

Defendant's sons have drug convictions does not show that Defendant knew that the rental truck contained drugs; certainly the fact that one son escaped from a halfway house does not shed light on this issue. Moreover, even if there was some tangential relevance to this evidence, the fact that it created the impression that most if not all members of Defendant Espinoza's immediate family were involved in drug trafficking suggests that whatever probative value it may have had was substantially outweighed by its prejudicial effect. Consequently, we believe that the trial judge abused her discretion in admitting this evidence concerning Defendant's sons. United States v. LaBarbera, 581 F.2d 107, 109 (5th Cir. 1978) (abuse of discretion to permit cross-examination of accused charged with gun violation about son's arrest for similar offense); United States v. Vigo, 435 F.2d 1347, 1350 (5th Cir. 1970) (holding that admission of evidence that Defendant's son had been convicted of selling and possessing heroin was error); and United States v. Polasek, 162 F.3d 878 (5th Cir. 1998) (reversing conviction because under general relevancy principles and Rule 403 evidence of business associate's conviction presented danger of "guilt by association").

Holding that the judge abused her discretion in admitting this evidence, we must determine whether the error was harmless. 28 U.S.C. § 2111 instructs us that in any appeal we render judgment "after an examination of the record without regard to errors or defects which do not affect the substantial rights of the parties." A trial court's "decision whether to admit or exclude evidence, is considered harmless 'unless a substantial right of

-13-

[a] party is affected.'" United States v. Charley, 189 F.3d 1251, 1270 (10th Cir. 1999) (quoting Fed.R.Evid. 103(a)). An error affects the substantial rights of a party if it had a '"substantial influence' on the outcome or [which] leaves one in 'grave doubt,' as to whether it had such effect." Id. (quoting United States v. Rivera, 900 F.2d 1462, 1469 (10th Cir. 1990) (en banc) (quoting Kotteakos v. United States, 328 U.S. 750, 765 (1946))). When conducting harmless error analysis, we review the record as a whole. United States v. McVeigh, 153 F.3d 1166, 1204 (10th Cir. 1998).

Based on our examination of the totality of the record and the extensive evidence mustered against Defendant Espinoza, we believe that although the district court erred by admitting the evidence concerning his sons, that error was harmless. Macsenti v. Becker, 237 F.3d 1223, 1238 (10th Cir. 2001); United States v. Maden, 114 F.3d 155, 158 (10th Cir. 1997); United States v. Robertson, 19 F.3d 1318, 1324 (10th Cir. 1994); United States v. Burson, 952 F.2d 1196, 1201-02 (10th Cir. 1991).

### III

### THE DELIBERATE IGNORANCE INSTRUCTION

### A

Defendant Espinoza also objected to the judge's instruction to the jurors that they could find that the prosecution satisfied the "knowledge" element of the offense if he had been deliberately ignorant of the presence of drugs on the rental truck. The judge

overruled the objection and submitted the deliberate ignorance instruction. In reviewing a challenge to a deliberate ignorance instruction based on insufficient evidence, we view the evidence in the light most favorable to the Government. United States v. Delreal-Ordones, 213 F.3d 1263, 1264 (10th Cir. 2000). Nonetheless, "[u]ltimately . . . we review the district court's decision to give a deliberate ignorance instruction de novo." Id.

Defendant Espinoza was charged with violating 21 U.S.C. § 841(a). The jury was instructed that to support a guilty verdict, the prosecution must prove beyond a reasonable doubt each of three elements: (1) the Defendant was in possession of a controlled substance; (2) the Defendant knew that he was in possession of a controlled substance; and (3) the Defendant intended to distribute some or all of the substance to another person.

Over Defendant Espinoza's objection, the trial judge instructed the jury concerning the knowledge element as follows:

> In every crime there must exist a union or joint operation of act and intent. The burden is always upon the prosecution to prove both act and intent beyond a reasonable doubt.

> As essential element of the crime charged in the indictment is that the act must have been done knowingly.

> An act is done knowingly, as required by the second element of the offense, if it is done voluntarily and purposely, and not because of mistake or inadvertence or other innocent reason.

> The element of knowledge may be satisfied by direct proof that Defendant actually knew or was aware of something, as demonstrated by his words or actions, or by inferences drawn from proof that a Defendant

-15-

deliberately closed his eyes to what would otherwise have been obvious to him. A finding beyond a reasonable doubt of a conscious purpose to avoid learning the truth would permit an inference of knowledge. <u>You may find that the required knowledge is established if the accused is aware of a high probability of the existence of the fact in question, unless he actually believes it does not exist</u>.

It is entirely up to you as to whether you find any actual knowledge or awareness of deliberate closing of the eyes, and the inference to be drawn from such evidence, that is, whether such evidence indicates a consciousness of guilt or nothing at all. A showing of mere negligence or mistake is not sufficient to support a finding of knowledge.

Intent ordinarily may not be proved directly, because there is no way of fathoming or scrutinizing the operations of the human mind. But you may infer Defendant's intent from the surrounding circumstances. You may consider any statement made and act done or omitted by Defendant, and all other facts and circumstances in evidence which indicate Defendant's state of mind at the time he is alleged to have committed the crime charged.

You may consider it reasonable to draw the inference and find that a person intends the natural probable consequences of acts knowingly done or knowingly omitted.

4 R. at 222-24 (quoting Instruction No. 17) (emphasis added).

Defendant Espinoza argues that in the instant case, the evidence presented by the prosecution was circumstantial as to his knowledge of the presence of the controlled substance and the evidence was admitted to show actual knowledge of the presence of controlled substances. Defendant Espinoza argues that there was no evidence presented that he engaged in deliberate acts to avoid acquiring actual knowledge of the marijuana. Consequently, Defendant contends, the deliberate ignorance instruction was in error.

The government defends the deliberate ignorance instruction by arguing that it

introduced evidence establishing that Defendant Espinoza had a "subjective reason to know" that there was a controlled substance in the rental truck.  Appellee's Brief at 13. Moreover, the government contends that the evidence indicated that even if Defendant did not have actual knowledge of the marijuana, he deliberately closed his eyes to several factors which would have led to such knowledge, including, inter alia: that his wife had arranged the details of the drug delivery; that she made similar arrangements for such deliveries previously; that she and her sons had been supplied by the same Mexican drug supplier; that as a result of the family's relationship with that drug supplier, Defendant's wife and sons all faced prosecution for drug crimes prior to the delivery; and that despite these facts Defendant did not ask his wife during the delivery whether there were drugs in the truck; that Defendant never asked her why they were driving "junk, foul-smelling furniture" to Kansas City; and that Defendant did not ask his wife why he was directed by a stranger to follow him to an unknown location in the rental truck at midnight.  Id. at 13-14.  The record supports the position of the government as to Defendant Espinoza's failure to ask his wife if there was marijuana in the truck.[5]

The government argues that where such evidence is present and tends to prove both the Defendant's actual knowledge and his deliberate ignorance, a deliberate ignorance instruction is proper.  Id. at 14 (citing United States v. Manriquez-Abizo, 833 F.2d 244, 249 (10th Cir. 1987)).

_____

[5]This conclusion is fully supported by the record even if the evidence concerning the drug activities of Defendant's sons are not taken into consideration.

**B**

We have said the issuing of a deliberate ignorance instruction is appropriate "only when the prosecution presents evidence that the Defendant purposely contrived to avoid learning all the facts in order to have a defense in the event of a subsequent prosecution." United States v. Hanzlick, 187 F.3d 1228, 1233 (10th Cir. 1999). We have stated that "the use of a deliberate ignorance instruction 'is rarely appropriate . . . because it is a rare occasion when the prosecution can present evidence that the Defendant deliberately avoided knowledge.'" Id. (quoting United States v. Hilliard, 31 F.3d 1509, 1514 (10th Cir. 1994)). Moreover, the evidence must indicate that the Defendant had subjective knowledge; the fact that an objective reasonable person would have had knowledge is immaterial. United States v. de Francisco-Lopez, 939 F.2d 1405, 1409 (10th Cir. 1991) ("The evidence must establish that the Defendant had subjective knowledge of his criminal behavior. Such knowledge may not be evaluated under an objective, reasonable person test.").

When the evidence presented in this case is taken in the light most favorable to the government as is required, United States v. Delreal-Ordones, 213 F.3d 1263, 1264 (10th Cir. 2000), we are not persuaded by Defendant Espinoza's contention that the prosecution failed to present evidence that he took deliberate steps to avoid acquiring actual knowledge that the truck was carrying illegal drugs. We have been clear that the district court "need not insist upon direct evidence of conscious avoidance of a fact before

-18-

tendering a deliberate avoidance instruction." Delreal-Ordones, 213 F.3d at 1268.

Rather, in establishing the Defendant's deliberate ignorance, the prosecution "is entitled

to rely on circumstantial evidence and the benefit of the favorable inferences to be drawn

therefrom." Id. (emphasis added); see also United States v. Lee, 54 F.3d 1534, 1539

(10th Cir. 1995) (observing that from "this testimony, the jury could reasonably have

inferred he was deliberately avoiding knowledge"); United States v. Custodio, 39 F.3d

1121, 1125 (10th Cir. 1994) ("[W]e also find substantial evidence from which the jury

could reasonably infer conscious avoidance.").

Here the prosecution presented evidence that Defendant Espinoza was aware that

his wife had been involved in smuggling drugs into the United States from Mexico in the

past because he knew of a pending drug charge against her stemming from her being

found on a bridge with cocaine in Presidio, Texas. Defendant Espinoza was also aware

that the instant trip from Texas to Kansas took place under unusual circumstances in that

he and his wife were asked to transport a truckload of "junk" and that he then met an

unknown man at midnight who needed Defendant to follow him with the truck. During

his redirect testimony at trial, Defendant Espinoza was asked: "Did you ask [your wife] if

there was marijuana in the truck?" He replied: "No, sir." 4 R. 183.

We have held that a "deliberate ignorance instruction is appropriate when a

Defendant denies knowledge of an operant fact but the evidence, direct or circumstantial,

shows that Defendant engaged in deliberate acts to avoid actual knowledge of that

operant fact." Delreal-Ordones, 213 F.3d at 1268. Taken in the light most favorable to the prosecution, the fact that Defendant Espinoza did not ask his wife to explain how they would return or whether they were transporting marijuana, when viewed in the context of the unusual circumstances of the trip and Defendant's awareness that his wife had previously been involved in drug smuggling, may be taken as circumstantial evidence of deliberate avoidance.[6] Id.

Defendant Espinoza contends, citing United States v. Sanchez-Robles, 927 F.2d. 1070, 1074 (9th Cir. 1991), that a deliberate ignorance instruction is appropriate only where the evidence supports both actual knowledge and deliberate ignorance, and suggests that if a deliberate ignorance instruction is given where there is evidence of direct knowledge but no evidence of avoidance, there is a danger that the jury could convict a Defendant who merely should have known about the criminal venture, which he argues is tantamount to being convicted for negligence.

We are unpersuaded. First, we believe that the jury in this case could properly draw inferences from the evidence adduced at trial that support either a finding of actual

---

[6]We are not persuaded by Defendant Espinoza's reliance on our decision in United States v de Francisco-Lopez, 939 F.2d 1405 (10th Cir. 1991), where we found that the giving of a deliberate ignorance instruction was reversible error. Although Defendant correctly cites a number of similarities between this case and de Francisco-Lopez (in both cases the Defendants consistently denied actual knowledge of possession of drugs; both involved drugs cleverly hidden and requiring removal by dismantling part of the vehicle; and the Defendants' explanations for their travel both bore some suspicious marks), based on our review of the evidence discussed above we feel that the government sufficiently developed circumstantial evidence of avoidance to warrant the deliberate ignorance instruction.

knowledge or deliberate ignorance. <u>Custodio</u>, 39 F.3d at 1125 ("We find there was substantial evidence on which the jury could find Dr. Custodio willfully avoided learning that he could not bill for procedures he neither performed nor supervised. We also find the Government presented sufficient evidence to show Dr. Custodio knowingly submitted false claims against the Government."); <u>see</u> <u>also</u> <u>United States v. Peterson</u>, 2001 WL 228032 (5th Cir. March 8, 2001) at *9 ("[T]he jury could reasonably infer from the evidence presented that the Defendants had the requisite intent to defraud. That surely encompasses a conclusion that the Defendants either: 1) were aware of a high probability that . . . operations constituted fraud but chose not to investigate (in which case the deliberate ignorance instruction was proper); or 2) actually knew that they were engaged in fraud.").

Second, contrary to Defendant Espinoza's assertion that he may have been convicted for having engaged in merely negligent behavior, the plain language of the jury instructions belies this risk. The trial judge was explicit in warning the jury: "A showing of mere negligence or mistake is not sufficient to support a finding of knowledge." In similar circumstances we have found that this is sufficient to alleviate the risk of a conviction based only on negligence. <u>United States v. Concha</u>, 2000 WL 1769584 at *3 (10th Cir., Dec. 1, 2000) (holding "there was no risk of a conviction based on negligence because "the challenged jury instruction explicitly instructed the jury that neither mistake nor negligence was sufficient to support a conviction"); <u>United States v. Fingado</u>, 934

F.2d 1163, 1167 (10th Cir. 1991) (rejecting argument that jury instruction improperly led to conviction on sole ground that Defendant should have known his conduct was illegal because the trial court "expressly directed the jury not to convict for negligence or mistake").

Defendant Espinoza further argues that reversal is required because under our opinion in de Francisco-Lopez, the government may not use the same evidence to show both that Defendant had actual knowledge of the marijuana's presence and that he deliberately avoided acquiring such knowledge. Appellant's Brief at 14 (citing de Francisco-Lopez, 939 F.2d at 1410 ("We emphasize, the same fact or facts cannot be used to prove both actual knowledge and deliberate indifference because the two are mutually exclusive concepts.")). However, considering all of our precedents, reversal is not required by this portion of de Francisco-Lopez because of prior, established precedent in this circuit. In Haynes v. Williams, 88 F.3d 898, 900 & n.4 (10th Cir. 1996), we explained that "when faced with an intra-circuit conflict, a panel should follow earlier, settled precedent over a subsequent deviation therefrom." Id. (citing United States v. Melendez-Garcia, 28 F.3d 1046, 1054 (10th Cir. 1994)); see also Webb v. ABF Freight System, Inc., 155 F.3d 1230, 1242 (10th Cir. 1998).

We are convinced that the portion of our de Francisco-Lopez opinion which Defendant Espinoza relies upon is in conflict with prior precedent of this court. In United States v. Ochoa-Fabian, 935 F.2d 1139, 1142 (10th Cir. 1991), we held that where "the

evidence supports both actual knowledge and deliberate ignorance, the [deliberate ignorance] instruction is properly given." See also United States v. Ashby, 864 F.2d 690, 693-94 (10th Cir. 1988), cert. denied,110 S. Ct. 1793 (1990); de Francisco-Lopez, 939 F.2d at 1415 (Baldock, J., dissenting).  Thus, we are convinced that under the precedents of this circuit, the jury may properly infer from the same evidence either that the Defendant had actual knowledge or that he deliberately avoided acquiring such knowledge.

Accordingly we **AFFIRM** the decision of the district court.