**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 30 2000**

**PATRICK FISHER**
**Clerk**

PUBLISH

### UNITED STATES COURT OF APPEALS

### TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

    No. 99-2188

JOSE G. DELREAL-ORDONES,

    Defendant-Appellant.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D.C. No. CR-98-126-BB)

---

David N. Williams, Assistant United States Attorney (John J. Kelly, United States Attorney, with him on the brief), Albuquerque, New Mexico, for Plaintiff-Appellee.

Benjamin A. Gonzales, Assistant Public Defender, Albuquerque, New Mexico, for Defendant-Appellant.

---

Before **BALDOCK**, **HOLLOWAY**, and **EBEL**, Circuit Judges.

---

**BALDOCK**, Circuit Judge.

A single-count indictment charged Defendant Jose Delreal-Ordones with

possession with intent to distribute in excess of one kilogram of methamphetamine

in violation of 21 U.S.C. § 841(a)(1).[1]  A jury found Defendant guilty, and the district

court sentenced him to 121 months imprisonment.  On appeal, Defendant contends the

evidence was insufficient to support the district court's instruction that the jury could find

Defendant "knowingly" possessed the methamphetamine if he "deliberately

blinded" himself to the fact it was located in his suitcase aboard an Amtrak train traveling

from Los Angeles, California to Dodge City, Kansas.  We exercise jurisdiction under

28 U.S.C. § 1291.

In reviewing a challenge to a "deliberate ignorance" instruction based on

insufficient evidence, we view the evidence in a light most favorable to the

Government, United States v. Bornfield, 145 F.3d 1123, 1129 (10th Cir. 1998),

and examine the instructions as a whole to determine whether, considered in

their entirety, the instructions accurately informed the jury of the applicable law,

United States v. Hanzlicek, 187 F.3d 1228, 1233 (10th Cir. 1999).  Ultimately,

however, we review the district court's decision to give a deliberate ignorance

instruction de novo.  United States v. de Francisco-Lopez, 939 F.2d 1405, 1409 (10th Cir.

1991).  Mindful of these standards, we affirm the judgment of the district court.[2]

_____

[1]  Section 841(a)(1) provides that "it shall be unlawful for any person knowingly or intentionally to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance."  21 U.S.C. § 841(a)(1).

[2]  Since de Francisco-Lopez, we have repeatedly applied a de novo standard to review the propriety of a deliberate ignorance instruction.  See, e.g., Hanzlicek, 187

(continued...)

2

# I.

Viewed in a light most favorable to the Government, the trial record reveals the following facts. On February 11, 1998, DEA Special Agent Michael Mans was waiting when the eastbound Amtrak passenger train arrived at the Albuquerque depot from Los Angeles shortly after 1:00 p.m. Agent Mans checked the train's passenger reservations and noted that on February 9, Defendant had purchased a one-way ticket from Los Angeles to Dodge City, Kansas with cash. Agent Mans boarded the train and observed Defendant exiting compartment eight of the sleeper car. Agent Mans also observed a black "stewardess-sized" suitcase in the compartment. Agent Mans approached Defendant and asked to speak with him. Defendant agreed. Agent Mans asked to see Defendant's ticket. Defendant returned to his compartment and retrieved his ticket. The ticket appeared in proper form.

When Defendant returned to the train after eating lunch, Agent Mans asked Defendant if he had any luggage onboard which the agent could search. Defendant answered yes and consented to Agent Mans' search of his suitcase. Returning to his

---

[2](...continued)
F.3d at 1233; United States v. Custodio, 39 F.3d 1121, 1124 (10th Cir. 1994); United States v. Sasser, 974 F.3d 1544, 1551 (10th Cir. 1992); United States v. Barbee, 968 F.2d 1026, 1033 (10th Cir. 1992). In other contexts, however, we have applied an abuse of discretion standard to the district court's decision to give a particular criminal instruction. See, e.g., United States v. Cerrato-Reyes, 176 F.3d 1253, 1262 (10th Cir. 1999). Because we apply the less deferential de novo standard to uphold the district court's deliberate ignorance instruction in this case, we need not resolve this apparent conflict.

sleeper car with Agent Mans, Defendant retrieved a key from his wallet and unlocked the suitcase. For security reasons, Agent Mans, rather than Defendant, unzipped the suitcase. Within the suitcase, Agent Mans located a "Fab" laundry detergent box inside two plastic "grocery-type" bags tied at the top. Agent Mans untied the bags and removed the box which appeared to have been opened and resealed. The box was "leaking a large amount of soap from both the top and bottom." Defendant gave Agent Mans permission to open the box. Inside the box, Agent Mans located four plastic-wrapped bundles which he believed contained narcotics. When the bundles' contents tested positive for methamphetamine, Agent Mans arrested Defendant.

A short time later at DEA offices, Agent Mans and two other agents interviewed Defendant, hoping to determine both the source and destination of the drugs. Defendant indicated that when he boarded the train in Los Angeles, he placed his suitcase in a common area. Somewhere between Los Angeles and Albuquerque, he decided to place his luggage in his sleeper compartment. When Defendant discovered he had lost the key to his suitcase, he obtained another key which fit the lock from a female passenger. Agent Mans asked Defendant if he was implying that someone on the train had placed the drugs in his suitcase. Defendant answered no, indicating he did not know how the drugs got into his suitcase.

Upon further questioning, Defendant stated he had met three men while visiting relatives in California–brothers Jose and Marcos Hermosillo, and their friend Ernesto,

4

also known as Escoba.  Before leaving Los Angeles on the evening of February 10,

Defendant spent a couple of days with the three men at a motel in Compton, California,

south of Los Angeles.  According to Agent Mans, Defendant stated that–

> during the time spent with them at the hotel and going out to party that he
> had ended up missing his train reservation . . . and that they had provided
> him with a box of Fab laundry detergent as a way of showing him that they
> weren't such bad guys for making him miss his train.

Defendant also indicated that as an additional gesture of kindness, the three men

had given him $100 to purchase the suitcase and some clothes.

Continuing with the interview, Defendant stated that he had not met the three men

in California, but at a party in Dodge City in the fall of 1997.  Shortly thereafter, Jose

Hermosillo offered to buy a motorcycle from Defendant for $5,000.  Defendant wanted

to sell the motorcycle because he had recently hurt his back and could no longer ride it.

In February 1998, the men came to Defendant's home to pick up the motorcycle

and haul it to California in the bed of a new truck.  Jose Hermosillo gave Defendant

$2,500 as a down payment.  Defendant retained the title pending final payment.

Because none of the three men had a driver's license, they asked Defendant

to drive the truck to California for them.  Defendant agreed to do so as part of

the deal.  Although the men originally told Defendant they needed a ride to northern

California, they decided to go to Los Angeles instead and ended up with Defendant

at a motel in Compton.

Finally, Agent Mans questioned Defendant about the methamphetamine's

5

destination. Agent Mans testified that Defendant stated "he didn't know whether someone would meet him at the train station or if he would go home and someone would call him there." The court permitted Agent Mans to testify that in his opinion "based on what [Defendant] had told us about what was going to happen once he reached Dodge City, I believe that he knew the methamphetamine was there, and that he was not willing to tell us who exactly it was going to."

Following Agent Mans' testimony, Defendant testified on his own behalf. Defendant's testimony regarding his sale of the motorcycle to Jose Hermosillo in Kansas and his subsequent trip to California with the three men was largely consistent with Agent Mans' testimony. Defendant stated that the men had agreed to give him a ride to the Los Angeles Amtrak station on the evening of February 9 to catch his return train, but when the time neared, they told Defendant he was already late and would miss his train. The men agreed to buy Defendant another ticket for the next day. Defendant phoned the station and upgraded his reservation from a coach seat to a sleeper compartment.

Defendant testified that he saw the laundry detergent box for the first time on February 9 at the motel in Compton when the three men told him they were going to wash some clothes. When asked to explain how the box ended up in his suitcase, Defendant replied:

> Well, [the next day] when I was fixing to leave, I was taking a shower.
> They told me they were going to pack the soap, and I told them no. They

6

told me, "What, you don't trust us or something," kind of make it feel like I don't trust them. And I told them, "Well, yeah, I do. Well okay fine." And they just put it in there, and then that was it.

Defendant stated that when he finished his shower, he didn't look in his suitcase because the men had packed his dirty clothes and locked the suitcase for him. Defendant claimed he never suspected that the men had placed drugs in his suitcase because "they were treating me nice," and he trusted them. Defendant repeatedly denied any knowledge of the drugs in his suitcase until he was arrested. Defendant also denied he told Agent Mans that he wasn't sure whether someone would meet him at the train station in Dodge City or phone him at home.

On cross-examination, the Government asked Defendant why he didn't find the three men suspicious. Specifically, the Government asked why, if the three men had driven themselves from California, they couldn't drive themselves back to California. The Government inquired about the three men's lack of any identification which led to Defendant registering the motel room under his own name. The Government also inquired whether any of the men had in fact washed any clothes while staying at the motel with Defendant. Defendant admitted they had not.

Defendant acknowledged that when he opened the suitcase on the train, he noticed detergent leaking from the box into his suitcase:

Q. So you saw the soap leaking out?
A. I saw the soap in the luggage inside.
Q. Was it leaking on your clothes, spilling on your clothes?
A. All over.

7

Q. All over?
A. Yeah. You can tell there are still some spots of soap there.
Q. When you saw that, what did you do?
A. Well, I just tried to stop it from spilling out.

Defendant admitted that he could have thrown the box away, and provided little explanation why he didn't do so.

## II.

Based on the foregoing evidence, the district court instructed the jury that to attain a conviction under 21 U.S.C. § 841(a)(1), the Government had the burden of proving each of the following elements beyond a reasonable doubt: (1) that Defendant knowingly possessed a controlled substance, (2) that the substance was methamphetamine, and (3) that Defendant possessed the substance with the intent to distribute it. See United States v. Carter, 130 F.3d 1432, 1440 (10th Cir. 1997). Over Defendant's objection, the court defined the word "knowingly" as follows:

> The word "knowingly," as that term has been used from time to time in these instructions, means that the act was done voluntarily and intentionally, and not because of mistake or accident. While knowledge on the part of the defendant cannot be established merely by demonstrating that the defendant was negligent, careless, or foolish, knowledge can be inferred if the defendant deliberately blinded himself to the existence of a fact.

Defendant concedes that the district court's deliberate ignorance instruction properly stated the law.[3] Rather, Defendant maintains that the evidence adduced at trial

---

[3] In his opening brief, Defendant states: "While the deliberate ignorance

(continued...)

8

instruction in this case properly stated the law, there was no evidence warranting such an instruction." In his reply brief, however, Defendant claims the instruction was flawed "because it did not inform the jury that Mr. Delreal was not guilty if he actually believed he was not carrying narcotics." Defendant points out that the Second Circuit requires that a deliberate ignorance instruction inform the jury it may not find knowledge of a fact if the defendant actually believed the fact did not exist. See United States v. Sicignano, 78 F.3d 69, 71 (2d Cir. 1996). Accord United States v. Jewel, 532 F.2d 697, 704 n.21 (9th Cir. 1976) (en banc). Otherwise, according to the Second Circuit, a jury might improperly convict a defendant who, while perhaps foolish, honestly believed he was not engaging in illegal activity. Sicignano, 78 F.3d at 71. Other circuits have no such requirement. See, e.g., First Circuit Pattern Jury Instructions–Criminal, Instr. No. 2.14 at 35 (1998); Fifth Circuit Pattern Jury Instructions–Criminal, Instr. No. 1.37 at 57 (1997); Seventh Circuit Federal Jury Instructions–Criminal, Instr. No. 4.06 at 60 (1999).

In United States v. Glick, 710 F.2d 639 (10th Cir. 1983), we endorsed the Second Circuit's approach:

> To insure that a defendant is only convicted if his ignorance is willful, rather than negligent, the preferable form of the instruction informs the jury . . . (1) that the required knowledge is established if the accused is aware of a high probability of the existence of the fact in question, (2) unless he actually believes it does not exist.

Id. at 643 (emphasis added). But see Hanzlicek, 187 F.3d at 1235 n.7 (approving deliberate ignorance instruction which made no reference to defendant's "belief" regarding the nonexistence of a fact). In Glick, the jury was instructed that defendant (1) could not deliberately close his eyes to that which otherwise would be obvious to him, but (2) could not be convicted for an act resulting from mistake, accident, or innocent reason, or (3) could not be convicted if he did not intentionally and knowingly participate in the criminal scheme. The court concluded that while "inclusion of the omitted language would have been preferable, the omission . . . did not constitute plain error." Glick, 710 F.2d at 643-44.

Because Defendant failed to object to the form of the deliberate ignorance instruction in the district court or in his opening brief on appeal, we too review only for plain error. See Fed. R. Crim. P. 52(b). Like in Glick, the instruction in this case informed the jury that (1) a "knowing" act must be done voluntarily and intentionally and not because of mistake or accident, (2) knowledge could be inferred if Defendant deliberately blinded himself to the existence of a fact, but (3) Defendant could not be convicted if he was merely negligent, careless, or foolish. Despite Defendant's contrary

(continued...)

9

did not warrant the district court tendering the instruction. Defendant refers us to our dicta in de Francisco-Lopez, 939 F.2d at 1409, oft-cited in appeals of this nature, wherein a panel majority opined that a deliberate ignorance instruction "is rarely appropriate . . . because it is a rare occasion when the prosecution can present evidence that the defendant deliberately avoided knowledge." But see id. at 1416 n.5 (Baldock, J., dissenting) (noting that because the court cannot anticipate the facts of every case where a deliberate ignorance instruction might be appropriate, little purpose is served by saying a deliberate ignorance instruction is "rarely appropriate").

According to Defendant, the evidence in this case does not support the inference that Defendant acted to deliberately avoid knowledge of the presence of methamphetamine in the detergent box inside his suitcase. Instead, Defendant argues a "profound possibility" exists that the jury improperly convicted him because he acted imprudently. We disagree. While the jury was free to find that Defendant had no knowledge of the drugs in his suitcase, the jury had sufficient evidence before it to disbelieve Defendant and make a contrary finding–that

---

[3](...continued)
assertion, the instruction adequately insured that Defendant only would be convicted if his ignorance was willful rather than negligent. Glick, 710 F.2d at 643. Because Defendant suffered no prejudice from the omission of the language we endorsed in Glick, that omission does not constitute plain error. See United States v. Uresti-Hernandez, 968 F.2d 1042, 1046 (10th Cir. 1992) (defining plain error in the context of a challenge to a deliberate ignorance instruction as that which "affects the defendant's right to a fair and impartial trial").

10

Defendant "deliberately blinded" himself to the existence of the fact.  See United States v.

Custodio, 39 F.3d 1121, 1124-25 (10th Cir. 1994).[4]

The district court need not insist upon direct evidence of conscious avoidance

of a fact before tendering a deliberate ignorance instruction.  Hanzlicek, 187 F.3d at 1233.

To establish a defendant's "deliberate ignorance," the Government is entitled to rely on

circumstantial evidence and the benefit of the favorable inferences to be drawn therefrom.

Id.  Such evidence and its inferences must establish that a defendant had subjective

knowledge of his criminal behavior.  de Francisco-Lopez, 939 F.3d at 1409.  Negligence

or even recklessness is not sufficient to charge a defendant with guilty knowledge.

United States v. Barbee, 968 F.2d 1026, 1033-34 (10th Cir. 1992).  We established nearly

forty years ago, however, that "one may not willfully and intentionally remain ignorant of

a fact, important and material to his conduct, and thereby escape punishment.  The test is

---

[4] Defendant also suggests that the deliberate ignorance instruction improperly
created a presumption of guilt by relieving the Government of the burden of proving
Defendant's intent to distribute the methamphetamine.  To the contrary, we find
nothing in the deliberate ignorance instruction which relieved the Government from
proving § 841(a)(1)'s intent element.  The Government undoubtedly met its burden
in this case.  Agent Mans uncovered nearly two kilograms or four pounds of
methamphetamine from Defendant's suitcase with a wholesale value of approximately
$ 40,000.  The Government presented the expert testimony of DEA agent David Lytal
that the packaging and quantity of the methamphetamine in this case was consistent with
an intent to distribute.  Beginning with United States v. Hooks, 780 F.2d 1526, 1532
(10th Cir. 1986), we have repeatedly stated that possession of a large quantity of narcotics
is sufficient to establish the element of intent to distribute.  Accord United States v.
McIntyre, 997 F.2d 687, 708 (10th Cir. 1993); United States v. Ray, 973 F.2d 840, 842
(10th Cir. 1992).

whether there was a conscious purpose to avoid enlightenment." Griego v. United States, 298 F.2d 845, 849 (10th Cir. 1962).

A deliberate ignorance instruction is appropriate when a defendant denies knowledge of an operant fact but the evidence, direct or circumstantial, shows that defendant engaged in deliberate acts to avoid actual knowledge of that operant fact. de Franciso-Lopez, 939 F.3d at 1411. Accord United States v. Lee, 54 F.3d 1534, 1538 (10th Cir. 1995). In other words, the district court may tender a deliberate ignorance instruction when the Government presents evidence that the defendant "purposely contrived to avoid learning all of the facts" in order to have a defense in the event of prosecution. Hanzlicek, 187 F.3d at 1233. The purpose of the instruction is to alert the jury that "the act of avoidance [could be] motivated by sufficient guilty knowledge to satisfy the knowing element of the crime." Bornfield, 145 F.3d at 1129 (internal quotations and ellipses omitted).

Viewed in a light most favorable to the Government, the evidence in this case, considered in its entirety, supports the inference that Defendant acted to deliberately avoid knowledge of the methamphetamine in his suitcase. When the three men first told Defendant they were going to place the detergent box in his suitcase, which he had just purchased the day before, Defendant said no. When they challenged Defendant, he acquiesced. Certainly, this supports the inference that Defendant believed the men were engaged in criminal activity. While in the shower, Defendant allowed the men to pack his

12

suitcase with his dirty clothes and lock it. Given the personal nature of a suitcase's contents, Defendant's failure to pack his own suitcase and open it after his shower infers that he was deliberately avoiding knowledge about the contents of his suitcase. In fact, Defendant didn't open his suitcase until he had departed Los Angeles on the train. When he finally opened his suitcase, he saw detergent spilling "all over" the inside of it. Still, Defendant kept the box in his suitcase, rather than dispose of it. This too supports an inference of Defendant's "guilty knowledge." See Barbee, 968 F.2d at 1033. Based on the foregoing, a jury could readily conclude that despite a clear opportunity to do so, Defendant "purposely" declined to learn more about his suitcase's contents. See Hanzlicek, 187 F.3d at 1233-34.

Defendant's statements during his interview with Agent Mans, viewed in a light most favorable to the Government, also give rise to an inference of guilty knowledge. Defendant first implied that someone on the train may have used his key to place the drugs in his suitcase while it was in the common luggage area. He then provided conflicting statements about where he had first met the three men, first he said in Los Angeles, then he said in Dodge City. Finally, when asked about the drugs' destination, Defendant told Agent Mans that he didn't know if someone would meet him at the train station or phone him at home. All this indicates a "high probability" existed that Defendant knew his suitcase contained drugs despite Defendant's deliberate attempt to refrain from acquiring affirmative knowledge of that fact. See de Francisco-

13

Lopez, 939 F.2d at 1418.

The facts of this case support the inference that Defendant knew he was a drug courier, yet he intentionally closed his eyes to it. The district court's deliberate ignorance instruction properly informed the jury that it could "look at the charade of ignorance as circumstantial proof of knowledge." United States v. Manriquez Arbizo , 833 F.2d 244, 248 (10th Cir. 1987) (noting that a deliberate ignorance instruction is "nothing more that a refined circumstantial evidence instruction properly tailored to the facts of [the] case"). The instruction did not authorize Defendant's conviction unless the jury concluded he had knowledge sufficient to satisfy § 841(a)(1)'s scienter element. Based on the evidence, the jury was entitled to so conclude. Accordingly, the judgment of the district court is

AFFIRMED.