PUBLISH

**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**April 6, 2006**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

**Elisabeth A. Shumaker**
**Clerk of Court**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

RODRIGO GABRIEL BAZ,

Defendant-Appellant.

No. 05-2106

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**
**(D.C. NO. 04-CR-521-MCA)**

Jess R. Lilley, Lilley Law Offices, Las Cruces, New Mexico, for the Defendant-Appellant.

Richard C. Williams, Assistant United States Attorney (David C. Iglesias, United States Attorney, with him on the brief) Albuquerque, New Mexico, for Plaintiff-Appellee.

Before **HARTZ** , **SEYMOUR** , and **McCONNELL** , Circuit Judges.

**McCONNELL** , Circuit Judge.

This case involves the propriety of instructing the jury on deliberate ignorance as a means of proving that the Defendant knowingly possessed with intent to distribute 100 kilograms or more of marijuana.

## I. Background

In February, 2004, a flight club member in San Diego, California, alerted law enforcement regarding unusual flight patterns reflected in the flight logs of Defendant-Appellant Rodrigo Gabriel Baz, who had rented the informant's Cessna airplane. On February 16, 2004, a U.S. Immigration and Customs Enforcement agent, responding to the tip, observed the aircraft that Mr. Baz had reserved for his next flight. Mr. Baz and another man arrived at approximately 8:15 p.m. in a white pickup truck, got out and approached the plane, then returned to the truck and drove to a convenience store. A border patrol agent in an unmarked vehicle followed the truck when it left the convenience store until it pulled to the shoulder of the freeway and the agent drove past. The truck then sped up to catch the agent's vehicle, its occupants (including Mr. Baz) staring at him. Mr. Baz did not fly the aircraft that night and no further observation took place.

Mr. Baz landed the rented Cessna at Las Cruces Airport in New Mexico shortly after midnight on February 18, 2004. It was Mr. Baz's fourth time at the airport; the previous time he had paid for his gas bill with $100 bills. On a prior

occasion, Mr. Baz had told Leroy Portillo, an employee at Las Cruces Airport, that he was going to flight school in Connecticut, yet he returned to the airport approximately every nine days. The airport employee on duty at the time told Las Cruces Police Officer Rudy Lopez that Mr. Baz had looked suspicious the last time. After the plane parked, Officer Lopez drove towards it in a marked police car, observed Mr. Baz lock the plane door, and noted that there were boxes stacked almost to the ceiling inside the plane.

Upon questioning, Mr. Baz told Officer Lopez that he flew at night to accumulate flight hours for an ATP license, that he was traveling from San Diego to Connecticut, and that he was transporting computer servers for his friend, "Ernesto Lopez." Mr. Baz subsequently told another officer who arrived later that he was carrying servers for "Jose Lopez." Other law enforcement agents who later interviewed Mr. Baz at the Las Cruces police station testified that he referred to the server owner as "Jose" and "Jesus."

Officer Lopez received permission from Mr. Baz to search the plane and observed that the boxes inside displayed markings such as "master bedroom"; there was no indication they contained computer parts. During the search, Mr. Baz appeared nervous. Officer Lopez conducted a pat-down search and found two cell phones in Mr. Baz's jacket. While Mr. Baz consented to a search of his person, he did not permit the boxes to be searched without the permission of the

owner. A canine unit arrived and inspected the plane at approximately 1:39 a.m., at which time the canine alerted. A search warrant was obtained at about 7:15 a.m. and agents proceeded to search the plane, discovering approximately 476 pounds of marijuana in the cardboard boxes.

During trial, Mr. Baz testified that Mr. Lopez—whom he had referred to as "Ernesto," "Jose," and, according to agents, "Jesus"—first approached him in August, 2003. According to Mr. Baz's testimony, Mr. Lopez asked him if he would fly computer equipment from San Diego to Connecticut. On the first such trip, Mr. Lopez brought the boxes to the airport in San Diego in a white pickup truck, but did not fly with Mr. Baz to Connecticut even though the passenger seat was open. Instead, Mr. Lopez met him at the Connecticut airport to receive the boxes. Mr. Baz testified that he assumed Mr. Lopez flew to Connecticut on an airline, but never thought about asking him why he did not just take the boxes with him on that flight. Mr. Baz also testified that at no time during the eighteen hour trip from San Diego to Connecticut did it ever cross his mind that something in the boxes might be stolen or illegal.

During the trial, and over Mr. Baz's objection, the district court found that the evidence warranted a deliberate ignorance instruction to the jury. The court instructed the jury that "knowledge can be inferred if the defendant deliberately blinded himself to the existence of a fact." Trial Tr. 593; R. Doc. 57, Instruction

No. 6. Mr. Baz appeals, arguing that the district court erred in instructing the jury. Our jurisdiction arises under 28 U.S.C. § 1291 and we **AFFIRM.**

## II. Discussion

"A deliberate ignorance instruction is appropriate when a defendant denies knowledge of an operant fact but the evidence, direct or circumstantial, shows that defendant engaged in deliberate acts to avoid actual knowledge of that operant fact." *United States v. Delreal-Ordones*, 213 F.3d 1263, 1268 (10th Cir. 2000). Such an instruction alerts a jury that conscious avoidance of knowledge in order to have a defense at trial suggests a "sufficient guilty knowledge to satisfy the knowing element of the crime." *Id.* at 1268-69. This Court has noted that "the use of a deliberate ignorance instruction 'is rarely appropriate . . . because it is a rare occasion when the prosecution can present evidence that the defendant deliberately avoided knowledge.'" *United States v. Hanzlicek*, 187 F.3d 1228, 1233 (10th Cir. 1999) (quoting *United States v. Hilliard*, 31 F.3d 1509, 1514 (10th Cir. 1994)). However, it is unnecessary that the government present "'direct evidence of conscious avoidance of a fact before tendering a deliberate avoidance instruction.'" *United States v. Espinoza*, 244 F.3d 1234, 1242–43 (10th Cir. 2001) (quoting *Delreal-Ordones*, 213 F.3d at 1268). "Rather, in establishing the Defendant's deliberate ignorance, the prosecution 'is entitled to rely on

-5-

circumstantial evidence and the benefit of the favorable inferences to be drawn therefrom.'" *Id.* (quoting *Delreal-Ordones*, 213 F.3d at 1268).

The evidence presented in this case, viewed in the light most favorable to the government, sufficiently supports the inference that Mr. Baz engaged in deliberate acts to avoid knowing the actual nature of his cargo. Mr. Baz testified that he knew very little about Mr. Lopez, misstated his first name multiple times, and did not even know his phone number, yet agreed to transport boxes for him across the country. The boxes he transported were not labeled in any way to indicate they contained computer equipment, and he possessed no documents referring to Mr. Lopez or the cargo. Mr. Baz never asked Mr. Lopez why he did not ride in the plane with him to Connecticut or take the boxes with him on a commercial airline. Finally, Mr. Baz claims never to have inspected the contents of his cargo at any time. Additionally, Mr. Baz appeared nervous during the police search of the plane and gave conflicting statements. In keeping with *Delreal-Ordones*, 213 F.3d at 1269, a jury could certainly conclude that Mr. Baz "purposely" declined to learn more about the boxes' true content. Taken in the aggregate, Mr. Baz's actions support an inference of deliberate ignorance sufficient to warrant the jury instruction.

Mr. Baz attempts to distinguish his case from three others recently decided by this Court. Mr. Baz argues that in contrast to the defendant in *Delreal-*

*Ordones* , he was not carrying drugs in containers that belonged to him personally.

Unlike the defendant in *Espinzoa* , he was not accompanied by an intimate

associate who he knew had been involved in drug smuggling nor was he

transporting anything that on its face appeared inappropriate.  Unlike the

defendant in *United States v. Soussi* , 316 F.3d 1095 (10th Cir. 2002), he was

never presented with any document or other evidence that would have informed

him of the illegality of his conduct had he examined it.  However, the cases cited

by Mr. Baz do not set forth specific facts *required* to sustain an instruction of

deliberate ignorance.  Rather, they provide examples of the sort of behavior or

facts which can do so.  Similarly, the facts of this case suggest that Mr. Baz had

ample reason to be suspicious of the cargo he transported, but consciously

avoided acquiring actual knowledge regarding its true contents.

The judgment of the United States District Court for the District of New

Mexico is  **AFFIRMED.**