**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 26, 2012**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

CARRIE MARIE NEIGHBORS,

Defendant-Appellant.

Nos. 10-3243 & 11-3037
(D.C. No. 2:07-CR-20124-CM-JPO-1)
(D. Kan.)

---

**ORDER AND JUDGMENT**[*]

---

Before **TYMKOVICH**, Circuit Judge, **BRORBY**, Senior Circuit Judge, and **EBEL**, Circuit Judge.

---

Carrie Marie Neighbors and her husband were accused of knowingly buying stolen property and reselling it on eBay for a profit. The second superseding indictment against the couple identified many manifestations of their scheme, including interstate wire and mail communications, and interstate financial transactions involving proceeds from the buying and selling of stolen property.

---

[*]     After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

A jury convicted Ms. Neighbors of twelve counts of wire fraud, three counts of money laundering, and one count of conspiracy to commit wire fraud, mail fraud, and money laundering. The district court sentenced Ms. Neighbors to 97 months' imprisonment. In this direct criminal appeal, she challenges: (1) the denial of a motion to suppress evidence seized from her home in December 2005, (2) a deliberate ignorance jury instruction, (3) the sufficiency of the evidence supporting her convictions, and (4) a two-level sentencing enhancement for obstruction of justice under section 3C1.1 of the United States Sentencing Guidelines Manual (2010).[1] Exercising jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), we affirm Ms. Neighbors' convictions and sentence.

## I. Background[2]

Ms. Neighbors and her husband owned and operated two stores in Kansas known as the Yellow House. Both stores bought personal property for resale. Ms. Neighbors ran the Lawrence store and her husband ran the Topeka store.

---

[1]     Ms. Neighbors filed a notice of appeal after she was convicted but before the district court imposed its sentence and judgment. That appeal, Case No. 10-3243, was abated. Once the district court entered its final judgment, Ms. Neighbors filed another appeal, Case No. 11-3037, which we consolidated with Case No. 10-3243.

[2]     The parties are familiar with the facts and extensive procedural history in this case. We therefore set forth only the material necessary to frame the four issues on appeal.

In October 2005, Target security personnel notified the Lawrence Kansas Police Department (LPD) that property stolen from a local Target was being sold by Ms. Neighbors on eBay under the username Yellowhair Bargains. Shortly thereafter, the LPD sent an undercover officer, Micky Rantz, to the Yellow House in Lawrence. He surveyed what was for sale and made small talk with Ms. Neighbors. The next day, he returned with a graphing calculator and a drill, both of which were new, in-the-box items. Ms. Neighbors purchased both. When Officer Rantz later checked eBay he saw the calculator and drill were posted for sale under Ms. Neighbors' username.

Before the end of November 2005, Officer Rantz completed five more transactions with Ms. Neighbors at the Lawrence store, selling her a variety of new, in-the-box items, including: a Garmin GPS, a KitchenAid mixer, iPod shuffles, iPod classics, Sonicare electric toothbrushes, and a Samsung camera. Each time Ms. Neighbors paid Officer Rantz thirty to forty percent of the new, in-the-box merchandise's retail value. And each time, after Ms. Neighbors purchased the merchandise, it was posted for sale on eBay under Ms. Neighbors' username.

In November 2005, LPD officers conducted two trash pulls at Ms. Neighbors' home seeking evidence related to her alleged resale of stolen property on eBay. In the trash, officers found several eBay and PayPal documents associated with Ms. Neighbors' eBay username and email address.

In December 2005, LPD officers executed state search warrants at Ms. Neighbors' home and the Yellow House in Lawrence.  Seven months later, in July 2006, federal search warrants were executed, again at her home and the Lawrence business.

During the December 2005 search of Ms. Neighbors' home, officers found sixteen cases of stolen athletic shoes, ten to twelve bicycles, empty bicycle boxes, business records related to the Yellow House, new jeans with tags still attached, shipping boxes, and packaging material.  During the July 2006 search of her home, officers found new, in-the-box merchandise, including:  an electric toothbrush, an underground electric dog fence, a mechanical bore sight for a firearm, a security camera, and a telephone.  All of the items found in July 2006 had eBay auction numbers attached.

During the December 2005 search of the Yellow House in Lawrence, officers discovered stolen merchandise, including a new, in-the-box Sony Cybershot camera, with its pricing label removed.[3]  The camera and other stolen goods, many of which had eBay auction numbers attached, were found in a "back closet area . . . that had [a] door . . . marked private."  R., Vol. 2 at 860.  In and around the back closet officers also found, among other items, four electric razors

---

[3]    At trial, a LPD detective testified that "the UPC label and/or the pricing label" is often removed by thieves to conceal the origin of stolen goods. R., Vol. 2 at 861.

and a perfume set. It was later determined that the razors and perfume set had been stolen from a Dillons. During the July 2006 search of the Yellow House in Lawrence, officers found several new, in-the-box tool sets near the back closet with eBay auction numbers attached.

At trial, numerous coconspirators testified, including Lewis Parsons, Patrick Nieder, James Ludwig, Michael Aldridge, Nicole Beach, Marcus Crawford, James Ludwig, and Stacy Barnes-Catlett. Other witnesses included an employee of Ms. Neighbors, Anthony Reyes, and LPD Officer Rantz.

Lewis Parsons, a truck driver, testified that he primarily sold Ms. Neighbors new, in-the-box DeWalt tool sets he had stolen from Home Depot or Lowe's. When Ms. Neighbors asked him if the tool sets he was selling her were stolen he "said yes." *Id.* at 1079. Nevertheless, Ms. Neighbors continued to buy tool sets from him. Mr. Parsons also testified that Ms. Neighbors asked him whether he could get "more DeWalt tool sets . . . , and I said yeah, I could. . . . She bought all the DeWalt cordless tool sets that I could bring in, and I brought in, oh, my God, I don't know, a bunch." *Id.* at 1080-81.

Patrick Nieder, a drug dealer, testified that he traded cocaine for stolen merchandise and then sold the stolen merchandise to Ms. Neighbors. He did this from the late nineties until 2003 or 2004, and dealt with Ms. Neighbors about three times a week. When asked whether he told Ms. Neighbors the items he was selling her were stolen, he answered, "Yes, sir, I did"; indeed, he told her "more

than once." *Id.* at 1204. But this admission did not halt Ms. Neighbors' business with Mr. Nieder. Further, when Mr. Nieder was asked whether he knew what Ms. Neighbors did with the items that he sold to her, he answered: "Yeah, she put 'em on the internet and sold 'em, or on eBay or something." *Id.* at 1206. He elaborated that he frequented her store and "she pretty much told [him] what she was doing" with the stolen merchandise he sold her. *Id.* at 1207.

James Ludwig testified that he began dealing with Ms. Neighbors in January 2004 and dealt with her on an almost daily basis. He stated that when he told Ms. Neighbors some of the merchandise he would be bringing in was stolen, "[s]he said [I] can live with that." *Id.* at 1393.

Anthony Reyes, who worked for Ms. Neighbors at the Lawrence Yellow House, also testified. He stated that when Ms. Neighbors bought new, in-the-box items, she moved them to a storage closet where no one could see them. He also testified about the time a police officer from the University of Kansas showed up at the store with a list of bicycles stolen from campus. According to Mr. Reyes, Ms. Neighbors reviewed the list and told the officer she did not recognize any of the stolen bicycles identified. After the officer left, however, Ms. Neighbors remarked that two of the bicycles on the officer's list were "in her possession." *Id.* at 1272.

Ultimately, a jury convicted Ms. Neighbors of twelve counts of wire fraud, *see* 18 U.S.C. §§ 2, 1343; three counts of money laundering, *see id.*

§§ 2, 1956(a)(1)(A)(i), and one count of conspiracy to commit wire fraud, mail fraud, and money laundering, *see id.* § 371. The district court determined that Ms. Neighbors should receive a two-level enhancement for obstruction of justice under § 3C1.1 of the United States Sentencing Guidelines Manual (USSG), and sentenced her to 97 months' imprisonment. Ms. Neighbors appeals her convictions and sentence.

## II. Analysis

### A. Denial of Ms. Neighbors' Motion to Suppress

Ms. Neighbors contends that the district court erred in denying her motion to suppress evidence seized from her home because the affidavit in support of the warrant to search her home did not establish probable cause for the search. In her view, probable cause was lacking because the supporting affidavit did not show a nexus between the materials officers recovered during their trash pulls at her home and "any specific transaction involving property that was suspected of being stolen." Aplt. Opening Br. at 14.

"When reviewing the district court's denial of a motion to suppress, we view the evidence in the light most favorable to the government[,] . . . accept the district court's factual findings unless . . . clearly erroneous," and review de novo its determination of reasonableness under the Fourth Amendment. *United States v. Burkhart*, 602 F.3d 1202, 1205 (10th Cir. 2010) (internal quotation marks omitted). Notwithstanding, our review of the probable cause ruling by the judge

issuing the search warrant is afforded "great deference." *Id.* (internal quotation marks omitted). "[A] reviewing court's only duty is to ensure that the [issuing judge] had a substantial basis for concluding that probable cause existed." *United States v. Mathis*, 357 F.3d 1200, 1205 (10th Cir. 2004) (internal quotation marks omitted).

An affidavit supporting a search warrant establishes probable cause for the warrant's issuance "if the totality of the information [in the affidavit] establishes the fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Roach*, 582 F.3d 1192, 1200 (10th Cir. 2009) (internal quotation marks omitted). We do not require "hard evidence or personal knowledge of illegal activity [to] link a Defendant's suspected unlawful activity to his home." *United States v. Biglow*, 562 F.3d 1272, 1279 (10th Cir. 2009) (internal quotation marks omitted). Rather, "a sufficient nexus is established once an affidavit describes circumstances which would warrant a person of reasonable caution in the belief that the articles sought are at a particular place." *Id.* (internal quotation marks omitted).

The search warrants in this case were sought to investigate "the fencing of stolen property and attempted possession of stolen property." R., Vol. 1 at 178 (affidavit in support of search warrants). To that end, the supporting affidavit set forth LPD Officer Rantz's opinion that the evidence collected during the trash pulls at Ms. Neighbors' home was "consistent with the selling and shipping of

-8-

posted eBay merchandise on the <u>yellowhair-bargains</u> web store indicating transactions [we]re being conducted at the Neighbors' residence." *Id.* at 165. The supporting affidavit also detailed the evidence collected in the trash pulls. This included: (1) eBay documents with the username Yellowhair Bargains, (2) two PayPal shipping labels from the Lawrence Yellow House to a California addressee, (3) one PayPal shipping label from the Lawrence Yellow House to an Alaska addressee, (4) a PayPal "create your own shipping label" listing the Lawrence Yellow House as the shipper, (5) an eBay document showing that payment for a computer had been sent to Ms. Neighbors' email address, and (6) an envelope addressed to Ms. Neighbors at the Lawrence Yellow House.

Mindful of our standard of review and applicable legal principles, the supporting affidavit provided the issuing judge a substantial basis for concluding that the materials identified in the warrant would be found in Ms. Neighbors' home.[4] Further, the district court did not err in concluding that the supporting

---

[4] As set forth in the search warrant, officers sought:

[a]ny books, record sheets, receipts, check/check ledgers, eBay documents and other documentation recording the sale, delivery, and possession of items being sold or purchased by or through the [Lawrence Yellow House], including any . . . electronic data. The data stored on any computer, or removable media, located at the . . . residence[, and] [p]ersonal property tending to establish identities of person(s) in control of [the Lawrence Yellow House]

(continued...)

affidavit, taken together with the reasonable inferences the issuing judge was allowed to draw, *Biglow*, 562 F.3d at 1280, provided probable cause to believe that the items sought might be found at Ms. Neighbors' home. Accordingly, we affirm the district court's denial of Ms. Neighbors' motion to suppress.

## B. Deliberate Ignorance Jury Instruction

Over defense counsel's objection, the district court instructed the jury that it could infer Ms. Neighbors' knowledge that the merchandise she purchased for resale was stolen. This type of instruction is known as a deliberate ignorance instruction and is "appropriate when a defendant denies knowledge of an operant fact but the evidence, direct or circumstantial, shows that defendant engaged in deliberate acts to avoid actual knowledge of that operant fact." *United States v. Delreal-Ordones*, 213 F.3d 1263, 1268 (10th Cir. 2000). The instruction "alerts a jury that conscious avoidance of knowledge in order to have a defense at trial suggests a sufficient guilty knowledge to satisfy the knowing element of the crime." *United States v. Baz*, 442 F.3d 1269, 1272 (10th Cir. 2006) (internal quotation marks omitted).

---

[4](...continued)
and the residence located at 1104 Andover, Lawrence, Douglas County, Kansas [(Ms. Neighbors' home)].

R., Vol. 1 at 179.

The instruction in this case read:

> When the word "knowingly" is used in these instructions, it means that the act was done voluntarily and intentionally, and not because of mistake or accident. Although knowledge on the part of the defendant cannot be established merely by demonstrating that the defendant was negligent, careless, or foolish, knowledge can be inferred if the defendant deliberately blinded herself to the existence of a fact. *Knowledge can be inferred if the defendant was aware of a high probability of the existence of the fact that the merchandise she was purchasing from many of her customers was stolen*, unless the defendant did not actually believe that the merchandise in question was stolen.

R., Vol. 1 at 339 (emphasis added) (Instruction No. 26). In finding the deliberate ignorance instruction appropriate, the district court stated: "Evidence was presented from which a jury could find either that Carrie Neighbors knew that items were stolen, or that she took measures to avoid finding out that items were stolen." *Id.*, Vol. 2 at 1513.

Although Ms. Neighbors concedes that the district court's deliberate ignorance instruction properly stated the law, she maintains that there was insufficient evidence to support an inference that she deliberately refrained from learning about the rightful ownership of property she purchased for resale. In support, she asserts that the evidence at trial showed she even "asked . . . sellers where the property came from and had them sign a form affirmatively stating that the property was not stolen." Aplt. Opening Br. at 18.

When "reviewing a challenge to a 'deliberate ignorance' instruction based on insufficient evidence, we view the evidence in a light most favorable to the

-11-

Government, and examine the instructions as a whole to determine whether, considered in their entirety, the instructions accurately informed the jury of the applicable law." *Delreal-Ordones*, 213 F.3d at 1264 (internal citation and quotation marks omitted). Ultimately, though, we review de novo the district court's decision to give a deliberate ignorance instruction. *Id.*

The evidence adduced at trial warranted the district court's deliberate ignorance instruction. Although some witnesses testified that they specifically told Ms. Neighbors the items they were selling her had been stolen, other witnesses indicated that Ms. Neighbors never asked about the merchandise's origins, even in the face of suspicious circumstances. For example, Michael Aldridge testified that he sold Ms. Neighbors new, in-the-box merchandise on a daily basis, but she never asked him where he got the merchandise. Similarly, Nicole Beach testified that she sold Ms. Neighbors several brand new Dyson vacuums but Ms. Neighbors never asked her where she had gotten the vacuums. Marcus Crawford testified that he and Ms. Neighbors would "play a little game" where he told her the bicycles he was selling to her had been won "in a poker game." R., Vol. 2 at 1037. Further, several witnesses testified that Ms. Neighbors paid only fifty percent of retail value for items that were brand new; a situation where a legitimate owner could have simply returned the items to the store for their full value.

Based on the foregoing, there was sufficient evidence for the jury to infer that Ms. Neighbors knew she was buying stolen property but intentionally closed her eyes to this fact. Thus, we affirm the district court's decision to tender the deliberate ignorance instruction because it properly informed the jury that it could "look at the charade of ignorance as circumstantial proof of knowledge," *Delreal-Ordones*, 213 F.3d at 1269 (internal quotation marks omitted).[4]

## C.  Sufficiency of the Evidence to Support the Jury's Guilty Verdicts

As best we can discern, Ms. Neighbors raises two sufficiency of the evidence arguments. First, she contends there was insufficient evidence to prove she knowingly bought and sold stolen property. Without the requisite mens rea, she asserts there was insufficient evidence to support the jury's guilty verdicts for wire fraud, money laundering, and conspiracy to commit wire fraud, mail fraud, and money laundering. Second, she contends there was insufficient evidence to support the jury's guilty verdict on her conspiracy charge because the government failed to prove she and her alleged coconspirators were interdependent, an

---

[4]    We do not consider Ms. Neighbors' perfunctory argument that a deliberate ignorance instruction is improper in a conspiracy case. Despite our local rules, it is unclear whether she objected to the deliberate ignorance instruction on this basis, *see* 10th Cir. R. 28.2(C)(3), and the government does not address the issue in its reply brief. Further, Ms. Neighbors failed to ask "us to address this issue under the plain error standard, and we decline to do so sua sponte." *United States v. Janus Indus.*, 48 F.3d 1548, 1559 (10th Cir. 1995).

essential element of conspiracy, *see United States v. Fishman*, 645 F.3d 1175, 1186 (10th Cir. 2011).

Our "restrictive standard of review for . . . sufficiency of the evidence question[s] provides us with very little leeway." *United States v. Evans*, 970 F.2d 663, 671 (10th Cir. 1992). Although we review de novo a challenge to the sufficiency of the evidence, "we owe considerable deference to the jury's verdict." *United States v. King*, 632 F.3d 646, 650 (10th Cir. 2011) (internal quotation marks omitted). We ask "only whether taking the evidence—both direct and circumstantial, together with the reasonable inferences to be drawn therefrom—in the light most favorable to the government, a reasonable jury would find the defendant guilty beyond a reasonable doubt." *Id.* (internal quotation marks omitted). We do "not weigh conflicting evidence or consider witness credibility, as that duty is delegated exclusively to the jury." *Id.* (internal quotation marks omitted). We "may reverse only if no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (internal quotation marks omitted).

### *Ms. Neighbors' Knowledge*

In support of her argument that she did not knowingly buy and sell stolen property, Ms. Neighbors refers to testimony that she often asked sellers whether their property was stolen, told sellers she would not purchase stolen property, and had sellers sign statements that the property they were selling was not stolen.

While that may be so, the jury also heard testimony from many witnesses indicating that they had specifically told Ms. Neighbors the merchandise she was buying from them was stolen. As noted earlier, Mr. Nieder testified that he told Ms. Neighbors more than once that the items he was selling to her were stolen. So did Mr. Parsons, although he only told her once. Mr. Ludwig testified that Ms. Neighbors said she could live with the fact that he was bringing her stolen merchandise. And, Officer Rantz testified that Ms. Neighbors bought merchandise from him even after he told her it had been "nabbed off the back of a truck by a buddy," R., Vol. 2 at 547.

The foregoing direct evidence, along with the circumstantial evidence discussed in relation to the deliberate ignorance jury instruction, was more than sufficient for a reasonable jury to conclude that Ms. Neighbors knowingly bought and sold stolen property. That is, a rational trier of fact could have found, beyond a reasonable doubt, the requisite mens rea present with respect to each of Ms. Neighbors' convictions. *See generally Fishman*, 645 F.3d at 1186-87 (setting forth the elements necessary to prove the substantive crimes at issue in Ms. Neighbors' case).

### *Ms. Neighbors' Conspiracy Conviction*

Ms. Neighbors also contends that there was insufficient evidence to support her conviction for a single conspiracy to commit wire fraud, mail fraud, and money laundering because the government failed to prove interdependence among

herself, her husband, and other individuals. In support she asserts that "[t]here was no evidence that those selling stolen property to [her] . . . agreed to anything other than the sale of the property itself. . . . [T]he sellers neither knew nor cared what [she] did with the property after she paid them for it." Aplt. Opening Br. at 25.

To establish guilt for a wire or mail fraud conspiracy, the government must prove "that (1) two or more persons agreed to violate the law, (2) the defendant knew the essential objectives of the conspiracy, (3) the defendant knowingly and voluntarily participated in the conspiracy, and (4) the alleged coconspirators were interdependent." *Fishman*, 645 F.3d at 1186 (internal quotation marks omitted). To establish guilt for a conspiracy to launder money, the government must prove "(1) that there was an agreement between two or more persons to commit money laundering and (2) that the defendant joined the agreement knowing its purpose and with the intent to further the illegal purpose." *Id.* at 1187 (internal quotation marks omitted); *see also id.* at 1188 (discussing "interdependence" of coconspirators in a money laundering scheme).

"Interdependence is present if the activities of a defendant charged with conspiracy facilitated the endeavors of other alleged coconspirators or facilitated the venture as a whole." *United States v. Wardell*, 591 F.3d 1279, 1291 (10th Cir. 2009) (internal quotation marks omitted). Circumstantial evidence "is often

sufficient to demonstrate interdependence." *Fishman*, 645 F.3d at 1189 (internal quotation marks omitted).

We conclude that the record contains ample evidence from which a reasonable jury could find interdependence among Ms. Neighbors and her coconspirators. The evidence at trial demonstrated that she relied upon her coconspirators for her inventory (without which she could not have made a profit on eBay), and that her alleged coconspirators relied upon her to buy stolen merchandise that they could not sell elsewhere.

As to Ms. Neighbors' reliance on her coconspirators for her inventory, Mr. Parsons testified that she "always wanted" DeWalt tool sets, she asked him to "get . . . more," and she bought all the stolen tool sets he brought to her. R., Vol. 2 at 1080-81. Mr. Aldridge testified that Ms. Neighbors told him specific merchandise she "could use," which he would then go steal and sell to her. *Id.* at 1124. Stacy Barnes-Catlett testified that she and Ms. Neighbors discussed what she should shoplift, based on the season. During back-to-school time, Ms. Neighbors suggested Ms. Barnes-Catlett shoplift musical instruments, calculators, and clothes (which she did), whereas during Christmas time, she would shoplift "things that were hot that year," *id.* at 1338. Likewise, Wesley Bateson testified that Ms. Neighbors asked him to get DeWalt tool sets, and Mr. Crawford testified that Ms. Neighbors told him, in a roundabout way, to get Trek bicycles.

-17-

Turning to Ms. Neighbors coconspirators' reliance on her to purchase property they could not sell elsewhere, Mr. Bateson testified that he sold stolen property to Ms. Neighbors, instead of going to a pawn shop, because Ms. Neighbors did not require identification that would link him to the stolen property. He also testified that Ms. Neighbors agreed to write checks to him in names other than his own, because he did not "want to write [his] name" on her seller's form stating that the property was not stolen. *Id.* at 985. Mr. Crawford testified that Ms. Neighbors did not require identification before buying property from him. Rather, identification only came into play "to cash the checks" from the Yellow House. *Id.* at 1035.

Further, the jury heard testimony that Ms. Neighbors told Mr. Nieder she was reselling on eBay the stolen merchandise she had purchased from him. They also heard from Ms. Barnes-Catlett, who said she thought Ms. Neighbors "put . . . on eBay" some of the shoplifted items Ms. Neighbors had purchased from her. *Id.* at 1352.

Guided by our authority concerning interdependence and the applicable standard of review, we conclude that the evidence at trial was sufficient to allow a rational jury to find Ms. Neighbors guilty, beyond a reasonable doubt, of conspiracy to commit wire fraud, mail fraud, and money laundering. We therefore affirm the district court's denial of Ms. Neighbors' oral motions for

judgment of acquittal, and her written motion for judgment of acquittal or for a new trial.

**D.  Obstruction of Justice Sentencing Enhancement**

Finally, Ms. Neighbors argues that the district court erred by applying a two-level enhancement to her offense level for obstruction of justice under § 3C1.1 of the USSG.  The government counters that the district court's findings of fact were sufficient to support its application of § 3C1.1.  We agree with the government.

"In reviewing the district court's application of the sentencing guidelines, this court reviews legal questions de novo and reviews factual findings for clear error, giving due deference to the district court's application of the guidelines to the facts."  *United States v. Maestas*, 642 F.3d 1315, 1319 (10th Cir. 2011) (internal quotation marks omitted).  "A finding of fact is clearly erroneous only if it is without factual support in the record or if the appellate court, after reviewing all of the evidence, is left with a definite and firm conviction that a mistake has been made."  *Id.* (internal quotation marks omitted).

Section 3C1.1 states that an offense level should be increased by two levels if

> (A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (i) the

defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense . . . .

USSG § 3C1.1. The commentary to § 3C1.1, provides a nonexhaustive list of the types of conduct warranting an obstruction of justice enhancement, including: "(a) threatening, intimidating, or otherwise unlawfully influencing a . . . witness . . . directly or indirectly, or attempting to do so;" "(d) destroying or concealing . . . evidence that is material to an official investigation or judicial proceeding[;]" and "(g) providing a materially false statement to a law enforcement officer that significantly obstructed or impeded the official investigation or prosecution of the instant offense . . . ." *Id.* cmt. 4 (Examples of Covered Conduct).

The presentence investigation report recommended the § 3C1.1 enhancement because of certain statements made by Ms. Neighbors in a blog concerning LPD officers and potential witnesses, and because she withheld evidence related to a stolen laptop that was brought into the Lawrence Yellow House. In overruling defense counsel's objection to the presentence investigation report's factual findings (in paragraphs forty-one through forty-three) and the actual adjustment (in paragraph fifty-one), the district court stated:

> To begin with, the court is aware of the number of allegations in this case that [Ms. Neighbors] was obstructing or attempting to obstruct or did in fact obstruct justice during the course of these proceedings. Over the years, the court has viewed much evidence of [her] alleged activities. . . . [N]early all of [her] activities have been related to the offenses or other closely related offenses. The court is mindful of

[her] argument or mentioning of her First Amendment constitutional rights that she believed that she was exercising during the course of these proceedings. . . .  In regards to this objection, the court believes what was most persuasive . . . [is] the fact that there does appear to have been attempts made by Miss Neighbors to impede or at least stall the prosecution of her case as well as malign the prosecution. Mindful of the language in . . . Section 3C[1].1, the court . . . find[s] that there was an attempt to obstruct justice, and as such, there is support for a two level adjustment[.]

R., Vol. 2 at 1560-61.

Having reviewed the evidence that was before the district court, consistent with our duty to afford deference to its application of the guidelines to the facts, we conclude that the district court properly overruled defense counsel's objection to the two-level sentencing enhancement under § 3C1.1.  Accordingly, we affirm the district court's application of § 3C1.1.

## III.  CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.

Entered for the Court

Wade Brorby
Senior Circuit Judge

-21-